STATE of Missouri, ex rel., Glen BIRK, Robert Felker, Cape County Concerned Citizens, Inc., Appellants,

v.

CITY OF JACKSON, Missouri, Mary Lowry, City Clerk, City of Jackson, Paul Sander, Mayor, City of Jackson, and Members of the Board of Aldermen, City of Jackson: David Hitt, David Ludwig, Glenn Oldham, Jack Piepenbrok, Dave Rieminger, Kevin Sawyer, Lee Roy Brown, and Valeria Tuschhoff, Respondents.

No. 66846.

Missouri Court of Appeals, Eastern District.

July 18, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 23, 1995.

Application to Transfer Denied Oct. 24, 1995.

Douglas Taft Sloan, Limbaugh, Russell, Payne & Howard, Cape Girardeau, for appellants.

D. Keith Henson, Paule, Camazine & Blumenthal, St. Louis, David G. Beeson, Buerkle, Beeson & Ludwig, Jackson, for respondents.

AHRENS, Judge.

In this court-tried case, plaintiffs, Glen Birk, Robert Felker, and Cape County Concerned Citizens, Inc.,[1] appeal the judgment of the trial court in favor of defendants on plaintiffs' petition for mandamus, declaratory judgment and damages. We affirm.

The City of Jackson is a fourth class city located in Cape Girardeau county. In September of 1977, the City purchased property in an arms' length transaction, without the use or threat to use eminent domain. The property is located approximately two to three miles outside the corporate limits of the City. The City has continuously owned the property since 1977, and until recently, operated a landfill on the property.

Plaintiff Birk owns property contiguous to the City's property. Plaintiff Felker owns

---

1. The corporate entity, Cape County Concerned Citizens, does not own property adjacent to the landfill at issue in this case. There is a question of whether the corporation has standing to challenge the authority of the City to own and operate a landfill outside its municipal boundaries. *See Citizens for Safe Waste Management v. St. Louis County*, 810 S.W.2d 635, 639–40 (Mo.App. 1991). However, we need not address the issue of standing because plaintiffs conceded at trial that the corporation "is a party [only] as far as the mandamus action [under the Sunshine Law] is concerned."

property within one-half mile of the City's property and adjacent to County Road 341 leading to the landfill.

In late 1993, in response to the change in federal landfill operation regulations effective April 9, 1994, the City decided to sell or lease the landfill. On January 31, 1994, the City Council met in special session to discuss a plan to enter into a lease/purchase agreement with a private operator. Mr. Birk, representing residents along County Road 341, voiced their objections and concerns regarding the sale or lease of the landfill.

On January 31, February 7 and 22,[2] the council met in closed sessions to discuss the lease/sale of the landfill. The City Attorney advised the City Council that the lease/sale could be discussed in closed session pursuant to an exception in the Open Meetings Law under § 610.021(2) RSMo 1994. The City Council believed that public knowledge would have affected the companies' presentation of the bid proposals and the terms of the proposals. Bid proposals from two companies were submitted and discussed at the January 31 closed session. Allied Waste Disposal submitted a third bid proposal in early February. The status of negotiations with Allied was discussed at the February 7 closed session. The City Council discussed the plaintiffs' concerns in study sessions with plaintiffs present and in closed sessions relating to the lease/sale of the landfill.

On February 21, 1994, plaintiffs requested records concerning the landfill. At the closed session on February 22, the City Attorney reported receiving plaintiffs' request. On February 24, the City Attorney wrote plaintiffs' attorney requesting additional time to provide most of the requested documents. The City Clerk officially responded to plaintiffs' request in a letter dated February 28. All records in the possession of the City requested by plaintiffs were produced for their inspection beginning February 28, with the exception of the minutes of the closed sessions concerning the lease/sale of the landfill. Plaintiffs and their counsel inspected records at City Hall on February 28 and March 1.

The City Attorney received a contract for the lease of the landfill by Allied late in the afternoon on March 7, 1994. Prior to receiving the contract, a City Council meeting had been scheduled for that same evening, with the agenda already printed and posted for the meeting. The contract was received too late in the day to add it to the posted agenda for the City Council meeting set for that evening.

At its meeting on March 7, the City Council passed an ordinance approving the contract between Allied and the City for the lease of the landfill. The contract contains specific terms and conditions addressing plaintiffs' concerns about trash blowing away from the landfill, maintenance of County Road 341, and potential environmental problems.

On March 9, the City Attorney advised plaintiffs that the minutes of the closed sessions concerning the lease/sale of the landfill were available. On March 14, 1994, Mayor Sander signed the contract to lease the landfill to Allied.

Plaintiffs filed their petition March 4, 1994, and later their amended petition on April 1, which contained four counts. Count I alleged that defendants violated the Missouri Sunshine Law by failing to produce certain documents as requested. Plaintiffs sought civil penalties as provided by law, and an order in mandamus to require compliance by defendants, to enjoin defendants from further illegal refusals of documents, and to void any action by the City in violation of the Sunshine Law, particularly the ordinance and contract regarding the landfill. In Count II, plaintiffs requested the same relief as in Count I, and attorneys fees, for the improper closed meetings under the Sunshine Law. Count III requested declaratory judgment and injunction declaring that the City has no legal right to continue to operate the landfill upon land situated outside the City's corporate limits and an order declaring the landfill contract void. Finally, Count IV was a 42

**2.** The closed sessions of January 31 and February 7 took place after the open sessions of the City Council.

U.S.C. § 1983 action for alleged violations of plaintiffs' rights to due process and equal protection under the United States Constitution.

In reviewing a bench-tried case, we must sustain the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Patrick V. Koepke Construction, Inc. v. Woodsage Construction Co.*, 844 S.W.2d 508, 512 (Mo.App.1992). On appeal, we view the evidence in a manner favorable to the decree and disregard contradictory evidence. *Zalmanoff v. Zalmanoff*, 862 S.W.2d 941, 944 (Mo.App.1993). We defer to the trial court's determination of the credibility of witnesses. Rule 73.01(c)(2).

In their first point on appeal, plaintiffs contend that the trial court erred in finding that Missouri law authorizes a city of the fourth class to own property outside of its boundaries for the purpose of operating a landfill. They assert that no express or implied statutory authorization exists for the City to own and operate a landfill beyond the corporate limits.

In its judgment, the trial court held that "[t]he City of Jackson is impliedly granted authority to own and/or operate a landfill located outside the City boundaries by the Missouri Constitution, RSMo 71.690, 79.370, 79.380, and 260.215." The court further found that the City has the implied authority "because collection and disposal of garbage is essential and indispensable in the maintenance of its citizens and the city."

"A municipal corporation is a creature of the legislature possessing only those powers expressly granted, or those necessarily or fairly implied in or incidental to express grants, or those essential to the declared objects of the municipality, and any reasonable doubt as to whether a power has been delegated to a municipality is resolved in favor of non-delegation." *City of Kirkwood v. City of Sunset Hills*, 589 S.W.2d 31, 35–36 (Mo.App.1979). Where the legislature has authorized a City to exercise a power and prescribed its exercise, "the right to exercise the power given in any other manner is necessarily denied." *City of Hamilton v.*

*Public Water Supply Dist.*, 849 S.W.2d 96, 104 (Mo.App.1993) (quoting *State ex rel. Blue Springs v. McWilliams*, 335 Mo. 816, 74 S.W.2d 363, 365 (1934)). Courts have generally followed a strict rule of construction when construing the powers of municipalities. *State ex rel. Mitchell v. City of Sikeston*, 555 S.W.2d 281, 288 (Mo. banc 1977).

Plaintiffs rely on *State ex rel. County of St. Charles v. Mehan*, 854 S.W.2d 531 (Mo.App. 1993), for the proposition that statutory cities are not authorized to own land outside of their boundaries for the purpose of landfill operation.

In *Mehan*, the City of St. Peters, a fourth class city, sought to acquire land outside its boundaries by eminent domain for a landfill. The court in *Mehan* construed various statutes, including §§ 71.680, 260.200, 260.209, and 260.215.1 RSMo (Supp.1990). After reviewing the Solid Waste Disposal Act (contained in Chapter 260 RSMo) and finding that § 71.680 is inapplicable, the court held that "nowhere does the legislature grant either cities or counties the power to condemn land for a landfill outside of their corporate boundaries." *Mehan*, 854 S.W.2d at 536. While the present case has similarities to *Mehan*, one critical distinction exists. In *Mehan*, St. Peters attempted to use its power of condemnation to acquire the property outside of its boundaries. In the present case, the City acquired the property in 1977 in an arms' length transaction without the use of or threat to use eminent domain. The Western District in *Mehan*, specifically addressed the applicability of its holding: "We do not consider whether property may be acquired outside a city's boundaries by means other than condemnation as provided under § 260.215.1." *Id.* at 533, n. 3. Therefore, *Mehan* is distinguishable and is not dispositive of the instant case.

Section 37 of Article IV of the Missouri Constitution concerns the health and general welfare of the people of Missouri and specifies that "the general assembly may grant power with respect thereto to counties, cities and other political subdivisions of the state." The City asserts that the legislature granted fourth class cities the express or

implied power to own and operate a landfill outside its boundaries in §§ 71.680, 71.690, 260.209, and 260.215.1, .3(1) RSMo 1994. We address each statute to determine if an express or implied grant of authority is contained therein.

Section 71.680.1 states, in relevant part: In addition to their other powers for the protection of the public health, each city of the second, third, or fourth class of this state ... may provide for the gathering, handling and disposition of garbage, trash, cinders, refuse matter and municipal waste *accumulating in such cities either by itself, or by contract with others,* and may pay for the same out of general revenues or by collection of charges for such service, *and may do such other and further acts as are expedient for the protection and preservation of the public health,* as the public health may be affected by the accumulation of trash, cinders, garbage, refuse matter and municipal waste. *Such cities may acquire by purchase,* construction, lease, gift or otherwise, *within or without the corporate limits of such cities, incinerators for the destruction of garbage, trash, cinders, refuse matter and municipal waste;* acquire by any of such means all equipment necessary or expedient for use in the collection, handling and disposition of garbage, trash, cinders, refuse matter and municipal waste; and acquire by any of such means purification plants or sewage disposal plants for the purification of all sewage accumulating in such cities. (Emphasis added.)

Section 71.690 states that "[s]uch cities may pass all ordinances necessary for the carrying into effect of the powers granted in § 71.680."

Plaintiffs argue that the above statutes do not *expressly* grant the City the authority to acquire the property outside its boundaries for a landfill. Plaintiffs further argue that as landfills are not incinerators, purification or sewage disposal plants, the power to own and operate the landfill outside the city limits was excluded. Plaintiffs rely on the rule of statu-

tory construction *expressio unius est exclusio alterius* to assert that the express mention of the incinerators and sewage plants implies the exclusion of the landfill. *See Mehan,* 854 S.W.2d at 536.

While we agree with plaintiffs that no express grant of authority exists, we do not find that the rules of statutory construction nor the holding in *Mehan* preclude the possibility that such authority may be implied.

First, *Mehan* is distinguishable from the present case in its analysis of § 71.680. In *Mehan,* the court was searching for a grant of power to *condemn* land for a landfill outside the corporate boundaries. In its search, the court examined § 71.680 for an *express grant* of such power. However, the court in *Mehan* did not reach the issue of whether the power to own and operate such a landfill could be implied where eminent domain is not used.

 Second, the maxim *expressio unius est exclusio alterius* —omissions shall be understood as exclusions—is to be used with great caution. *Pippins v. City of St. Louis,* 823 S.W.2d 131, 133 (Mo.App.1992). "To cite the silence of the statute, however, does not end the inquiry." *State ex rel. Rowland Group v. Koehr,* 831 S.W.2d 930, 931 (Mo. banc 1992). Standard rules of statutory construction require that a statute be given a reasonable interpretation in light of the legislative objective. *Id.* In construing a statute, we may take into consideration statutes involving similar or related subject matter when such statutes shed light upon meaning of the statute being construed. *State ex rel. Rothermich v. Gallagher,* 816 S.W.2d 194, 200 (Mo. banc 1991).

While § 71.680 may not specifically mention landfills, the Solid Waste Disposal Act discusses in detail the obligation and authority of cities and counties to collect and dispose of solid wastes.[3]

Section 260.215.1 states, in relevant part:

---

**3.** Section 71.680 was first enacted in 1929, re-enacted in 1939 with the new Constitution, and revised in 1955. Portions of the Solid Waste Disposal Act were enacted in 1972 with numerous sections adopted in 1990 or later.

Except as provided in subsection 4 of this section,[4] each city and each county or a combination of cities and counties shall *provide individually or collectively for the collection and disposal of solid wastes for those areas within its boundaries* that are to be served by the solid waste management system; shall be responsible for implementing their approved plan required by section 260.220 as it relates to the storage, collection, transportation, processing, and disposal of their solid wastes; and *may purchase all necessary equipment, acquire all necessary land,* build any necessary buildings, incinerators, transfer stations, or other structures, lease or otherwise acquire the right to use land or equipment. (Emphasis added.)

The statute also grants cities and counties the authority to levy and collect charges necessary for providing waste disposal services. § 260.215.1.

Looking at the statutes together, Section 71.680 provides that a fourth class city may acquire by purchase, within or without the corporate limits, incinerators for the destruction of municipal waste. This section also states that that power is "[i]n addition to [a city's] other powers for the protection of the public health." Section 71.680 was last revised in 1955. Section 260.215.1 states that cities and counties shall provide for the collection of waste and grants them the power to purchase all necessary equipment, build any necessary buildings, and acquire all necessary land. This latter section was enacted in 1972 with several revisions by the legislature since that time. The grant of power for a municipality to see to the disposal of municipal waste under both statutes is authorized by Article IV, § 37 of the Missouri Constitution regarding the health and general welfare of the people.

In addition, it appears that the legislature in § 260.209 considered zoning ramifications when a city or county exercises the power granted in § 260.215.1 to provide for waste disposal. Under § 260.209, any city or county that acquires real property outside its boundaries to establish and operate a waste disposal facility "shall be subject to and com-

ply with any and all zoning ordinances" of the area where the city or county acquired the property.

Considering the mandate to the City to provide for the collection and disposal of solid wastes and construing together §§ 71.680 and 260.215.1, we hold that the City of Jackson, as a fourth class city, has the implied power to purchase land outside its municipal boundaries for the purpose of operating a municipal landfill. To hold otherwise would potentially subject multiple second, third, and fourth class cities and their citizens to undue hardship and health risks. We do not believe that the intent of the Missouri legislature was to require these smaller cities to locate their municipal landfills within their corporate limits.

As we conclude that the City had the authority to own and operate a landfill outside its city limits, we also conclude that the City had the authority to lease the property to Allied for the operation of the landfill. Section 260.215.3(1) provides that cities or counties may contract with any person, city, county, sewer district, etc., "to carry out their responsibilities to the storage, collection, transportation, processing or disposal of solid wastes." "Person" for purposes of the Solid Waste Disposal Act includes "any individual, partnership, corporation, association, [etc.]" § 260.200(19). Also, § 71.680 states that a city may "contract with others" to provide for the disposal of municipal waste. Therefore, the City is authorized to contract with Allied for the operation of the municipal landfill. The trial court did not err in finding that the City is impliedly authorized to own and/or operate a landfill located outside the city boundaries. Point denied.

Plaintiff's second point on appeal asserts that the trial court erred in finding that laches barred their claim regarding the City's ownership and operation of the landfill. As we have reviewed that allegation of error on the merits, this point is moot.

In their third point, plaintiffs contend that the trial court erred in refusing to issue mandamus and in finding that the City did

---

4. The exceptions of § 260.215.4 are inapplicable to the issues here on appeal.

not violate the Missouri Sunshine Law by holding meetings in closed session and denying records to plaintiffs. Plaintiffs' third point addresses the rejection of Counts I & II of their petition which sought civil penalties and an order in mandamus to require compliance by the City and to void any action by the City in violation of the Sunshine Law. We address separately the issues of the closed sessions of the City Council and the denial of public records. Our review will be guided by the principles for review of a bench-tried case outlined earlier in this opinion.

Plaintiffs contend that they made a prima facie claim for violations of the Missouri Open Meetings Law, specifically §§ 610.021 and 610.022 RSMo 1994.

> Section 610.021 states, in relevant part:
> Except to the extent disclosure is otherwise required by law, a public governmental body is authorized to close meetings, records and votes, to the extent they relate to the following:
> (2) *Leasing, purchase or sale of real estate by a public governmental body where public knowledge of the transaction might adversely affect the legal consideration therefor.* However, any minutes or vote or public record approving a contract relating to the leasing, purchase or sale of real estate by a public governmental body shall be made public upon execution of the lease, purchase or sale of the real estate. (Emphasis added.)

Section 610.011 states that the exceptions to the statute requiring open meetings and open records shall be strictly construed.

Plaintiffs assert that they were denied access to three closed sessions of the City Council.[5] Plaintiffs rely on § 610.027 to contend that the City has the burden of persuasion to show compliance with the statutes. Section 610.027.2 states:

> Once a party seeking judicial enforcement of sections 610.010 to 610.026 demonstrates to the court that the body in question is subject to the requirements of sections

610.010 to 610.026 and has held a closed meeting, record, or vote, the burden of persuasion shall be on the body and its members to demonstrate compliance with the requirements of sections 610.010 to 610.026.

Plaintiffs contend that the City failed to sustain its burden to demonstrate one of the exceptions applied to allow the City to meet in closed session.

■ First, plaintiffs allege that the City failed to prove that the purpose of the meetings was related to the "[l]easing, purchase or sale of real estate by a public governmental body." § 610.021(2). Plaintiffs state that the contract between the City and Allied is not for the sale of the landfill property, nor is it a lease. The document is entitled "Landfill Redesign and Operation Agreement." Plaintiffs contend that the agreement is not a lease for several reasons: (1) the term "lease is not used; (2) the agreement is simply a license for Allied to operate the landfill and remit to the City a "royalty", not a lease payment, for the privilege; (3) the contract contains an option to buy which is not a significant feature of the contract; and (4) the contract allows the City to regain stringent control over the use of the property, "contrary to the idea of a lease, which grants to the lessee exclusive rights to use property."

■ Plaintiffs' focus upon the terms of the document to establish that the meetings did not properly relate to the lease, purchase or sale of the landfill misapplies § 610.021. The statute clearly states that the City can close its council meetings to the public when the meeting relates to the leasing, purchase or sale of real estate. The statute does not require that those meetings be productive to the extent that a lease, purchase or sale results. We note that should such a contract be executed, the minutes, vote or public record shall be made public. § 610.021(2).

In the present case, the City Council agendas clearly indicate that the City planned "to enter into a long-term lease/purchase agree-

---

5. The parties do not dispute that the City Council of the City of Jackson is a public governmental body for purposes of the Sunshine Law.

ment with a private operator to take over the operation of the landfill and make the necessary improvements that would bring the landfill into compliance" with federal regulations. The deposition testimonies of the Mayor and the City Administrator both state that the lease/sale of the landfill was discussed at each of the three closed meetings. The City met its burden of showing that the closed session meetings were related to the lease, purchase, or sale of property.

■ Second, plaintiffs contend that the City failed to show that "public knowledge of the transaction *might* adversely affect the legal consideration therefor." § 610.021(2). (Emphasis added.) The Mayor testified that if the contract negotiations had fallen through, and if other operators had become aware of this fact, then it could have jeopardized the negotiations to sell or lease the property. Plaintiff called this a "post hoc rationalization."[6] We disagree. The Mayor also testified that "[i]f the agreement would have been reached with any of the three companies and would have become [known and] fallen through for any reason, ... we would have been in a very poor position to move on." We defer to the trial court's determination of the credibility of the witnesses, Rule 73.01(c)(2), and we conclude that public knowledge of the City's attempt to find an owner or operator for the landfill could have adversely affected the City's position and its negotiations. The City was therefore authorized under the exception of § 610.021(2) to hold its closed session City Council meetings to discuss the lease or sale of the landfill property.

Next, we turn to the allegation by plaintiffs that the City denied them access to public records regarding the landfill. Under § 610.021, a public governmental body is authorized to close records and votes when they relate to the lease, purchase or sale of real estate where the public knowledge might have an adverse effect on the legal consider-

ation. However, regarding records specifically, the statute goes on to state that "any minutes or vote or public record *approving a contract* relating to the leasing, purchase, or sale of real estate by a governmental body *shall be made public upon execution of the lease, purchase or sale* of the real estate." § 610.021. (Emphasis added.)

■ In the present case, we have previously concluded that the closed sessions were authorized under the exception of § 610.021(2). Likewise, therefore, the records were exempted from public disclosure until after the lease was executed.

The record reveals that plaintiffs requested documents relating to the landfill in a letter on February 21, 1994. In response to the request, all documents requested by plaintiffs were made available for their inspection, with the exception of the minutes of the closed sessions concerning the lease/sale of the landfill.[7] On March 7, 1994, the City Council passed an ordinance approving the contract with Allied.[8] On March 9, 1994, the City made the closed sessions' minutes available to plaintiffs. The trial court did not err in finding that the City could withhold the minutes of the closed sessions until the ordinance approving the contract was adopted and that the City responded in a timely and proper manner to plaintiffs' request for documents.

■ Finally, plaintiffs allege that the City violated § 610.020 "for failing to give adequate notice of the City's intent to discuss the topic of the landfill contract at the March 7, 1994 meeting" and requests civil fines for the violation. Beyond the bare statement just quoted, plaintiffs fail to argue or cite any sources supporting their allegation. Although this court is not obligated to consider allegations of error not briefed or not properly briefed, Rule 84.13(a), we review the allegation *ex gratia* and we conclude that the trial court did not err in finding that it was impractical or impossible to add the discus-

---

6. Plaintiffs argue that the City did not hold its meetings in private and that it kept its records secret because "it wanted to avoid healthy competition among potential operators" in that it was "more politically expedient." There is no evidence in the record to support this allegation.

7. Plaintiffs do not allege on appeal that the records were not timely produced in accordance with § 610.026.

8. The contract was actually signed by the Mayor on behalf of the City on March 14, 1994.

sion relating to the approval of the contract to the posted agenda for the March 7, 1994 City Council meeting, and so no notice was required by § 610.020.

In summary, the trial court did not err in finding that the City Council properly held closed sessions and properly withheld documents regarding the landfill lease/sale under § 610.021. When requested, the documents were produced in a proper and timely manner. The trial court properly declined to issue an order in mandamus, to impose fines, to award attorneys fees, and to hold the ordinance and contract regarding the landfill as void. Point denied.

In their last point, plaintiffs contend that the trial court erred in ruling against their § 1983 civil rights claim as moot. Plaintiffs concede that if this court should "determine that they are not entitled to relief pursuant to the Missouri Sunshine Law or based upon the City's operation of the landfill outside of its boundaries without lawful authority, then based upon the same facts they are not entitled to relief pursuant to 42 U.S.C. § 1983." As we have denied plaintiffs relief, this point of error is denied as moot.

Plaintiffs request attorneys fees and expenses associated with this appeal, pursuant to Rule 400 of the Eastern District rules, § 610.027.3 RSMo 1994, and 42 U.S.C. §§ 1983 and 1988. This request is denied.

The judgment of the trial court is affirmed.

KAROHL, P.J., and DOWD, J., concur.

