**Betty Jo MATTHEWS,**
**Plaintiff/Respondent,**

v.

**CITY OF JENNINGS, et al.,**
**Defendants/Appellants.**

No. 73010.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 25, 1998.

Rehearing Denied Oct. 26, 1998.

Jamis Kresyman, Lloyd E. Eaker, Clayton, for Appellants.

Diana M. Schmidt, Peper, Martin, et al., St. Louis, for Respondent.

SIMON, Judge.

Defendants, City of Jennings (City), et al., appeal from a judgment and order of the trial court issuing a permanent injunction in favor of plaintiff, Betty Jo Matthews, enjoining defendants, their servants, agents and employees from taking any action against plaintiff or her property, from taking, impounding or destroying her dogs, and from charging plaintiff with any crime or violation of the law, in connection with, arising from or related to defendants' refusal to grant plaintiff a kennel license pursuant to the Municipal Code of the City of Jennings.

On appeal, defendants contend that the trial court erred in its: (1) interpretation of the facts as stated in its Findings of Fact No. 9 and in its reliance on said fact; (2) reliance on Conclusion of Law No. 4 that plaintiff has met all the requirements of the Kennel License Ordinance; (3) Conclusion of Law No. 5 that a maintenance of a kennel is a permitted land use for property zoned R–1 residential pursuant to the City of Jennings code; (4) Conclusion of Law No. 6 that no harm will result to the public welfare by issuance of a kennel license to respondent; (5) Conclusion of Law No. 9 that defendant's decision denying plaintiff's application for a kennel license is unlawful, unreasonable, arbitrary and capricious and involves an abuse of discretion; and (6) in entering judgment and ordering a permanent injunction to issue, in that the Kennel License Ordinance plaintiff applied for was for a one-year license, which has now been repealed by defendants and in that judgment should have been for defendants. We reverse.

■ Appellate courts reviewing trial court's judicial review of administrative decision should exercise power to set aside decree or judgment on the ground that it is against the weight of the evidence with caution and with firm belief that decree or judgment is wrong. *Citizens for Safe Waste Management v. St. Louis County*, 810 S.W.2d 635, 641 (Mo.App.1991). Accordingly, our review is directed by Rule 73.01, as construed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The record reveals plaintiff owns eight dogs and lives on a one acre residence, surrounded by commercial property, in the City of Jennings, Missouri. Plaintiff has owned five of her dogs for three years and three of her dogs for four years. Plaintiff has a large tennis court enclosed by a nine-foot-high chain-link fence, which is now used as a dog pen. It adjoins plaintiff's basement, so that her dogs can be let in and out of the house. Plaintiff has never allowed her dogs to run loose and all her dogs are vaccinated and spayed or neutered. There has been only one complaint about her dogs. However, the complaint was never substantiated and City never contacted plaintiff regarding the complaint.

In May 1995, plaintiff received a notice from City demanding that she get rid of all but three of her dogs. Plaintiff telephoned City and requested that she be allowed to keep her dogs. She was told that City's ordinances allow no more that three dogs without a kennel license. She then telephoned City Councilman Conway, who advised her to apply for a kennel license.

On August 9, 1995, plaintiff applied to City for a non-commercial kennel license. Her application stated in pertinent part, "I ... apply for a non-commercial kennel license ... All I want is to keep the dogs I currently have as members of my family. I do not intend to breed, sell, or, in any way, conduct a business involving my own pets or any other animals." Pursuant to City ordinance No. 223, plaintiff submitted her application with a petition supported and signed by 17 of her neighbors.

On August 18, 1995, defendants wrote a letter to plaintiff informing her that the City Council denied her request for a non-commercial kennel license. The letter stated that the denial was "based on the fact that a kennel is not a permitted land use in a residentially-zoned area." City's zoning ordinance provides in pertinent part:

Section 9. R–1 Residential District regulations:

* * *

2. Permitted land uses and developments, 1–10.

(1) Single-family dwellings;

(3) Public or private kindergarten, elementary, secondary and collegiate schools;

(4) Day care centers, family day care homes, and group day care homes;

(5) Public and private not-for-profit parks and playgrounds;

(6) Home occupations;

(7) Fire stations;

(8) Cemetaries;

(9) Name plates, informational and directional signs;

(10) Accessory buildings, land uses, and activities customarily incidental to any of the above uses.

3. Additional land uses and developments which may be permitted if approved by the city council under conditions and requirements specified in section 24 of this ordinance:

(1) Public and private not-for-profit community centers, libraries, museums, private clubs, and recreational land uses;

(2) Local public utility facilities, provided that any installation other than poles and equipment attached thereto shall be adequately screened with landscaping, fencing, walls, or any combination thereof; or shall be placed underground; or shall be enclosed in a structure in such a manner so as to blend with and complement the character of the surrounding area;

(3) Golf course, excepting practice driving tees and miniature courses;

(4) Nursing homes;

(5) All public utility facilities;

(6) Retreats owned and operated by religious, educational or other not-for-profit establishments

(7) Hospitals and associated clinics;

(8) Foster homes for handicapped children;

(9) Specialized private schools;

(10) Dormitories or group living facilities for religious, educational or charitable purposes;

(11) Accessory buildings, land uses and activities customarily incidental to any of the above uses.

On March 13, 1996, as demanded by City, plaintiff removed all but three of her dogs from her premises and placed the dogs in a commercial kennel at a cost of approximately $800.00 per month.

Subsequently, plaintiff filed an appeal with the St. Louis County Circuit Court, pursuant to Section 536.150 RSMo.1994 (all further references shall be to RSMo.1994, unless otherwise indicated), requesting review of the Jennings City Council decision not to issue her a non-commercial kennel license. On November 26, 1996, the St. Louis County Circuit Court granted plaintiff a preliminary injunction permitting her to keep her dogs. Upon issuance of the preliminary injunction, she brought her dogs home from the kennel after boarding them for approximately six months. After plaintiff brought her dogs home, an official from the Department of Public Works told her that the injunction was legally defective and that she would nevertheless have to get rid of her dogs. Plaintiff did not comply with this demand.

On July 16, 1997, the trial court entered its findings of fact, conclusions of law and a permanent injunction in favor of plaintiff. The court's findings of fact provide in pertinent part:

9. On September 27, 199[3], defendants granted a non-commercial kennel license to Mr. Jerry Ivy to maintain a kennel in a residential neighborhood pursuant to the Kennel License Ordinance.

The court's conclusions of law and order provide in pertinent part:

4. Plaintiff has met all the requirements of the Kennel License Ordinance.

5. Maintenance of a kennel is a permitted land use for property zoned "R–1 Residential" pursuant to the City of Jennings Code.

6. No harm will result to the public welfare by issuance of a kennel license to plaintiff.

7. Irreparable harm will result to plaintiff if she is not permitted to keep all of her dogs on her premises.

8. Plaintiff has no adequate remedy at law if deprived of her dogs.

9. Defendants' decision denying plaintiff's application for a kennel license is unlawful, unreasonable, arbitrary and capricious and involves an abuse of discretion.

### ORDER

IT IS THE JUDGMENT AND ORDER OF THE COURT that plaintiff's Motion for a Permanent Injunction must be, and the same accordingly is SUSTAINED, and said judgment and Permanent Injunction is ordered to issue.

IT IS ORDERED that defendants, their servants, agents and employees be, and are, enjoined from taking any action against Plaintiff or her property, are enjoined from taking, impounding or destroying her dogs, and are enjoined from charging plaintiff with any crime or violation of law, in connection with, arising from or related to defendants' refusal to grant plaintiff a kennel license pursuant to the Municipal Code of the City of Jennings.

The threshold issue is whether Jennings zoning ordinance permits the maintenance of a kennel in districts zoned "R–1 Residential." Therefore, we shall initially address defendants' third point. Defendants contend that the trial court erred in its Conclusion of Law No. 5 that a maintenance of a kennel is a permitted land use for property zoned "R–1 Residential" pursuant to City's zoning ordinance in that a plain reading of City's residential zoning ordinance indicates that a kennel is not a permitted use. Plaintiff contends that the maintenance of a kennel falls within the definition of "home occupation" because a kennel can be classified as a domestic activity and because the definition of "home occupation" does not limit permitted activities solely to those conducted as businesses.

■ Here, it is undisputed that maintenance of a kennel is not an enumerated land use for property zoned "R–1 Residential" in City. However, plaintiff presented evidence at trial which was intended to show that maintenance of a kennel falls within the definition of "home occupation" as provided by City's zoning code. "Home occupation" is defined as follows:

A domestic activity carried on by no more than two members of a family residing on the premises, but excluding beauty shops, barber shops, music schools, convalescent or nursing homes, tourist homes, massage or other establishments offering services to the general public, and providing that there are no signs nor any display that will indicate from the exterior of the building that it is being utilized in whole or in part for any purpose other than that of a dwelling; providing also that there is no stock in trade or commodity sold upon the premises, no person is employed other than a member of the family residing on the premises, and no mechanical equipment is used except such as is customary for purely domestic or household purposes.

■ In construing an ordinance of a city, we may apply the same general rules of construction as are applicable to our state statutes. *Fleming v. Moore Brothers Realty Co.*, 363 Mo. 305, 251 S.W.2d 8, 15 (1952). When interpreting statutes, we must ascertain intent of the legislature from language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning. *State ex rel. Riordan v. Dierker*, 956 S.W.2d 258, 260 (Mo.banc 1997). Further, where a phrase or term is specially defined by statute, such particular definition is binding on the court and must be given effect. *State v. Haskins*, 950 S.W.2d 613, 617 (Mo.App.1997). However, it is fundamental that a section of a statute should not be read in isolation from the context of the whole act. *Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 19 (Mo.banc 1995).

The definition of "home occupation" sets forth certain restrictions which must be observed in order for an activity to be a permissible "home occupation." In certain respects, plaintiff's keeping of eight dogs is not at odds with the definition of "home occupation." Maintaining a kennel is arguably a "domestic activity." There is no sign or any other display indicating that a business is being conducted inside the home. Plaintiff sells no

product or goods in trade, and she is not offering services to the general public. In fact, her application for a kennel license states that she does not intend to operate a business of any kind in connection with keeping her eight dogs.

Although "home occupation" is specially defined as "a domestic activity," it is clear that the intent of the City Council's definition of "home occupation," when viewed in context of the zoning code, is a "domestic activity" on the premises conducted for a business purpose. The definition specifically excludes such businesses as beauty shops, barber shops, music schools and others and further prohibits the employment of person other than a family member residing on the premises and the sale of stock in trade or commodity.

Maintenance of a kennel may be considered a domestic activity and permitted as a home occupation pursuant to City's zoning ordinance if the kennel is operated for a business purpose. However, maintaining a kennel for purely private use is not an authorized use of property zoned "R–1 Residential" because it is not a specifically permitted use and it does not fall within the definition of home occupation. Further, the record indicates that it is precisely because plaintiff does not intend to maintain a kennel for business purposes that she was found to be in violation of the zoning ordinance. Therefore, the trial court erred in concluding that maintenance of a kennel is a permitted land use in City on property zoned "R–1 Residential."

■ In point one, defendants contend that the trial court erred in its interpretation of the facts as stated in its Findings of Fact No. 9 and in its reliance on said fact in that there was no evidence presented that Mr. Ivy was granted a non-commercial kennel license and because whether or not he had been granted a license is irrelevant in that previous mistakes would not alter or amend City's zoning ordinance. Although City may have, in the past, issued a non-commercial kennel license to a resident in a residential zone, City is not estopped in its denial of a license to plaintiff. *City of St. Ann v. Elam,* 661 S.W.2d 632, 635 (Mo.App.1983). Therefore, the trial court

erred in ordering a permanent injunction in favor of plaintiff.

Due to the disposition of points one and three, we need not address defendants' other points.

JUDGMENT REVERSED.

ROBERT G. DOWD, Jr., P.J. and HOFF, J., concur.