STATE ex rel. James S. TEEFEY and
Agri–Lawn, Inc., Respondents,

v.

BOARD OF ZONING ADJUSTMENT
OF KANSAS CITY, Missouri, et
al., Appellants.

No. SC 82061.

Supreme Court of Missouri,
En Banc.

June 27, 2000.

Rehearing Denied Aug. 29, 2000.

Matthew K. Partin, William C. Partin, Kansas City, for respondents.

Patricia R. Jensen, Kansas City, for appellants.

Michael S. Dodig, Church, Dodig, Arbuckle & Carey, LLC, Lee's Summit, Amicus Curiae, for Nicky & Lew Bunch and Nila & Craig Cleaves.

PER CURIAM.[1]

The Board of Zoning Adjustment of Kansas City, Missouri (BZA), appeals the judgment of the circuit court reversing its affirmance of a Codes Administration Department (CAD) citation against James Teefey and Agri–Lawn, Inc. (Respondents) for operating a sanitary landfill on their property. The BZA contends that the circuit court erred in reversing its decision because the decision was authorized by law and was supported by competent and substantial evidence. After opinion by the

1. This opinion incorporates in large part the Court of Appeals opinion authored by Honor- able Robert G. Ulrich.

Court of Appeals, Western District, this Court granted transfer. Mo. Const. art. V, sec. 10; Rule 83.03. The judgment of the trial court is reversed, and the cause is remanded to the circuit court for entry of judgment affirming the BZA's decision.

James Teefey owns 36 acres of property located at 1515 East 131st Street in Kansas City. The property is zoned district RA (agriculture). Mr. Teefey's home as well as his landscape and nursery business, Agri–Lawn, Inc., is located on this property. Agri–Lawn grows various trees, shrubs, and plants on the property for sale and provides landscaping and lawncare services.

In response to a complaint filed by a neighbor regarding dumping on Respondents' property and the resulting noise, pollution and odors, the CAD inspected Respondents' property on February 21, 1996. The inspection revealed that Respondents "dump grass clippings [and] twigs for compost" on the property. Pursuant to the inspection, the CAD issued a notice of violation of zoning ordinances to Respondents on April 4, 1996. The citation charged, "This property is being used for sanitary landfill in a district zoned RA. Such uses are first allowed within a MR zoning district." The citation listed the date of violation as February 21, 1996.[2]

Respondents appealed the citation to the BZA on April 19, 1996. Hearings were held on Respondents' appeal on May 28 and August 23, 1996. On August 29, 1996, the BZA upheld the CAD decision that the Respondents' property was being used as a sanitary landfill in district RA in violation of zoning ordinances. Thereafter, Respondents filed a petition for writ of certio-

rari in the circuit court for review of the BZA's decision. On March 13, 1997, the circuit court found that insufficient evidence existed to support the BZA's determination that Respondents maintained a sanitary landfill on their property on February 21, 1996, and remanded the case to the BZA for further evidentiary hearings on the issue.

A third hearing was held before the BZA on September 12, 1997. At the hearing, Mr. Teefey testified that grass clippings, leaves, twigs, and small shrubs are deposited in a compost pile on the property for recycling. Some of the waste is produced from the property, itself, but other waste comes from the properties of Respondents' ten commercial customers and approximately 150 residential customers. Mr. Teefey admitted that although he periodically turns or moves the pile, he does not "wet" it or add chemicals to it.[3] Mr. Teefey also admitted that he does not haul the waste from his customers' properties to a specified dump, but instead dumps it on his own property to avoid dumping fees. Following the hearing on remand, the BZA again upheld the decision of the CAD that Respondents were operating a sanitary landfill on their property in violation of zoning ordinances.

Respondents filed a petition for writ of certiorari for review of the BZA's decision on September 17, 1997. After reviewing the transcripts and evidence in the case, the circuit court found that the BZA's affirmance of the CAD citation was not supported by competent and substantial evidence on the record. Specifically, the court determined that "little, if any evidence" was presented that Respondents operated a sanitary landfill on their prop-

**2.** Another citation was issued by the CAD in February 1996 charging that Mr. Teefey and Agri–Lawn were operating a business not permitted in a district RA zone. This citation is not at issue in this appeal.

**3.** Evidence was introduced at the hearings before the BZA regarding the proper operation of a compost facility and Respondents' deficient management of the compost pile on

their property. Specifically, a letter introduced at the hearings from a compost and recycling educational consultant stated that the purpose of Respondents' facility is not making compost and that the deficiencies in the operation "make it very likely that the real purpose of the operation is storing incoming materials from the existing lawn service business."

erty on February 21, 1996. The court, therefore, reversed the decision of the BZA affirming the CAD citation.

On appeal, the BZA claims that the circuit court erred in reversing its decision affirming the CAD citation against Respondents because its decision was authorized by law and was supported by competent and substantial evidence. Specifically, the BZA contends that the grass, leaves, and twigs found on Respondents' property on February 21, 1996, constituted "solid waste" within the definition of a sanitary landfill in the zoning ordinances. Respondents contend, on the other hand, that the BZA's decision was unlawful in that the materials found in the compost pile on their property constituted "yard waste," which is separate and distinct from "solid waste" under the zoning ordinances and Missouri statutes.

■ An appellate court reviews the findings and conclusions of the BZA and not the judgment of the trial court. *State ex rel. Columbus Park Community Council v. Board of Zoning Adjustment of Kansas City,* 864 S.W.2d 437, 440 (Mo.App. 1993). The scope of review is limited to determination of "whether the Board's action is supported by competent and substantial evidence upon the whole record or whether it is arbitrary, capricious, unreasonable, unlawful, or in excess of its jurisdiction." *Hutchens v. St. Louis County,* 848 S.W.2d 616, 617 (Mo.App.1993). In determining whether substantial evidence existed to support the BZA's decision, an appellate court must view the evidence and reasonable inferences therefrom in a light most favorable to the decision. *Columbus Park,* 864 S.W.2d at 440. In reviewing the legality of the decision, the reviewing court should hold the decision to be illegal and void if the BZA exceeds the authority granted to it. *Id.* A question of law is a matter for the independent judgment of the reviewing court. *Id.*

■ In construing city ordinances, an appellate court applies the same general rules of construction as are applicable to state statutes. *Matthews v. City of Jennings,* 978 S.W.2d 12, 15 (Mo.App.1998). The cardinal rule for construing ordinances is to ascertain and give effect to the intent of the enacting legislative body. *City of Sugar Creek v. Reese,* 969 S.W.2d 888, 891 (Mo.App.1998). Words contained in an ordinance should be given their plain and ordinary meaning and should be interpreted to avoid absurd results. *McCollum v. Director of Revenue,* 906 S.W.2d 368, 369 (Mo. banc 1995); *Law v. City of Maryville,* 933 S.W.2d 873, 876 (Mo.App.1996). Where a phrase or term is specifically defined by ordinance, such particular definition is binding on the court and must be given effect. *Matthews,* 978 S.W.2d at 15.

■ The purpose of district MR (materials reprocessing district) under the Kansas City, Missouri, zoning ordinances is "to identify and appropriately locate uses which involve the recovery and reclamation of materials and the processing or reprocessing of waste and other similar uses which may affect adjoining properties." KANSAS CITY, MO., CODE OF ORDINANCES, section 80–203(a)(1)(1994). Two uses permitted in a MR district include a sanitary landfill and a solid waste processing facility. Sections 80–203(c)(6) and (7). Section 80–203(c)(6) defines the term "sanitary landfill" as "an area of land used for disposing of solid waste." Section 80–203(c)(6). The term "solid waste" is defined as:

> garbage, refuse or other discarded materials, including but not limited to solid or semisolid waste materials resulting from industrial, commercial, agricultural, governmental and domestic activities, but does not include hazardous waste, special waste, incinerator ash, recovered materials, overburden, rock, tailings, matte, slag or waste material resulting from mining, milling or smelting.

Section 80–203(c)(6). A "solid waste processing facility" is "[a]ny facility where solid wastes are salvaged, processed or transferred, including a compost facility."

Section 80–203(c)(7). The term "yard waste compost facility" is defined as "a facility that processes grass, leaves, brush and other organic landscape wastes from more than one household, institution or business establishment." Section 80–20(a).

By definition, both uses – a sanitary landfill and a solid waste processing facility – involve the disposal or processing of solid waste. Because the definition of "solid waste processing facility" in section 80–203(c)(7) includes a yard waste compost facility, yard waste – grass, leaves, brush, and other organic landscape wastes – from more than one household is considered solid waste under the ordinances. Furthermore, giving the words of section 80–203(c)(6) their plain and ordinary meaning in the context of the purpose of MR districts, yard waste is implicitly included within the definition of solid waste as "solid or semisolid waste materials resulting from . . . commercial [or] agricultural . . . activities." Whether yard waste "from more than one household" is simply disposed of in a sanitary landfill or processed in a solid waste processing facility, which includes a compost facility, the city council of Kansas City intended to locate such facilities, which may affect adjoining properties, only in districts zoned MR. Such uses are not permitted in districts zoned RA (agriculture). *See* section 80–50(a) (listing 11 permitted uses within district RA).[4]

■■■■ Respondents argue that the term "yard waste," as used in the zoning ordinances, cannot properly be included within the definition of "solid waste," because those terms have separate and mutually exclusive definitions under the Missouri statutes pertaining to solid waste disposal, sections 260.200 to 260.255, RSMo 1994. As Respondents explain, under Missouri law, municipal ordinances must be harmonized with the statutes of

the state, and if the ordinances cannot be harmonized, they are void. *City of Dellwood v. Twyford,* 912 S.W.2d 58, 59 (Mo. banc 1995), citing *Morrow v. City of Kansas City,* 788 S.W.2d 278, 281 (Mo. banc 1990); *Miller v. City of Manchester,* 834 S.W.2d 904, 907 (Mo.App.1992). However, a court should construe ordinances to uphold their validity unless the ordinances are expressly inconsistent or in irreconcilable conflict with the general law of the state. *McCollum v. Director of Revenue,* 906 S.W.2d 368, 369 (Mo. banc 1995), citing *Cape Motor Lodge, Inc. v. City of Cape Girardeau,* 706 S.W.2d 208, 212 (Mo. banc 1986). Ordinances may supplement state laws, but when the expressed or implied provisions of each are inconsistent or in irreconcilable conflict, then the statutes annul the ordinances. *Miller,* 834 S.W.2d at 907; *Combined Communications Corp. v. City of Bridgeton,* 939 S.W.2d 460, 463 (Mo.App.1996). To determine if a conflict exists between an ordinance and a state statute, the test is whether the ordinance permits that which the statute prohibits or prohibits that which the statute permits. *Twyford,* 912 S.W.2d at 59, citing *Morrow,* 788 S.W.2d at 281.

■■■■ Missouri's solid waste disposal statutes were enacted "to prevent public nuisances, public health hazards, and the despoliation of the environment that necessarily accompany the accumulation and unmanaged disposal of garbage, refuse, and filth." *Craig v. City of Macon,* 543 S.W.2d 772, 773 (Mo. banc 1976). The statutes encompass the obligation and authority of cities and counties to collect and dispose of solid wastes. *State ex rel. Birk v. City of Jackson,* 907 S.W.2d 181, 185 (Mo.App. 1995). It defines "yard waste" and "solid waste" separately and prohibits the disposal of yard waste in a solid waste disposal area. Section 260.250.1, RSMo 1994.

---

4. Section 80–50(a)(11) permits accessory uses or uses "commonly required for the operation of any of the [permitted] uses in this subsection." The issue of whether a compost pile or

facility is an accessory use to any of the permitted uses in a district RA was, however, not raised by either party in this appeal, and, therefore, is not addressed.

Although the zoning ordinances implicitly include yard waste within the definition of "solid waste," they are not in conflict with any provision of the statutes, even though the statutes make a distinction between the two types of wastes. The zoning ordinances prohibit the location of solid waste disposal and processing facilities except in areas or districts zoned MR. On the other hand, the statutes, and specifically section 260.250.1, prohibit the disposal of yard waste in a solid waste disposal facility. The statutory prohibition has no relevance to this case because Appellants are not requiring, or even permitting, Respondents to dispose of yard waste with solid waste. Appellants seek nothing more than to prohibit Respondents from dumping solid waste/yard waste on land that is not zoned MR, which is not a matter the statutes purport to address. Despite the confusion created by the fact that the statutes distinguish between yard waste and solid waste, and the ordinances do not make that distinction, the ordinances do not permit that which the statutes prohibit, nor do they prohibit that which the statutes permit.

The evidence in this case was undisputed that grass, leaves, twigs, and small shrubs were not only produced from Respondents' property itself but were also brought onto the property from the properties of Agri–Lawn's customers and that such waste was found on the property on February 21, 1996. Competent and substantial evidence was also presented that the waste was simply disposed of on the property in a compost pile and was not properly processed. The BZA's decision that Respondents operated a sanitary landfill on property zoned RA on February 21, 1996, was, therefore, lawful and supported by competent and substantial evidence.

The judgment of the trial court is reversed, and the cause is remanded to the circuit court for entry of judgment affirming the BZA's decision.

LIMBAUGH, COVINGTON, WHITE, WOLFF and BENTON, JJ., and SIMON and CRANDALL, Sp.JJ., concur.

PRICE, C.J., and HOLSTEIN, J., not participating.