Nathan REIZ, et al., Appellants,

v.

BOARD OF ZONING ADJUSTMENT OF KANSAS CITY, Missouri, et al., Respondents.

No. WD 70925.

Missouri Court of Appeals, Western District.

March 23, 2010.

Application for Transfer Denied Aug. 31, 2010.

Gordon D. Gee, Kansas City, MO, for Appellants.

Galen P. Beaufort, City Attorney, M. Margaret Sheahan Moran, Senior Associate City Attorney, Kansas City, MO, for Respondents Board of Zoning Adjustment of Kansas City Missouri, and City of Kansas City, Missouri.

Before Division III: JAMES EDWARD WELSH, Presiding Judge, and MARK D. PFEIFFER and KAREN KING MITCHELL, Judges.

KAREN KING MITCHELL, Judge.

This is an appeal from the judgment of the Circuit Court of Jackson County, Missouri ("trial court"), affirming the determination by Respondent Board of Zoning Adjustment of Kansas City, Missouri ("BZA"), that a billboard erected on property belonging to Appellant Nathan Reiz ("Reiz") and leased to Appellant Porlier Outdoor Advertising Co. ("Porlier") was illegal, as it was within 150 feet of the curb line of property used as a public park. We affirm the judgment of the BZA.

## Factual and Procedural Background

On February 27, 2006, Porlier's predecessor in interest, Pinnacle Management Group, LLC ("Pinnacle"), filed an application with Respondent City of Kansas City, Missouri ("City"), for an outdoor advertising sign permit to erect a billboard on property owned by Reiz at 1001 Locust Street. The property was being used as a surface parking lot at the time, although a publicized proposal was underway to convert the lot and surrounding properties into a mixed-use development including residences and a new headquarters for an area construction company. The application for the billboard included plans that had been prepared by a registered land surveyor. The plans showed that the proposed billboard would be located exactly 150 feet from the right-of-way setback line on the property being used as Ilus W. Davis Park. On the same day the application was filed, a City representative inspected the site for the proposed billboard and issued a pre-permit inspection form which provided that "permission for the above described work is hereby granted." On March 1, 2006, City issued a permit granting permission to install the billboard.

On May 23, 2006, Pinnacle commenced construction of the billboard. On May 25, 2006, with construction nearly completed, the City inspector who initially approved the billboard returned to the property and delivered a stop work order to Pinnacle that stated, "[y]ou are ordered to stop, Construction of Outdoor Advertising sign Section 6–76 Height Limits within Airport height zones immediately. The work ordered stopped is contrary to Section 18–19(d)(2) Sign Permit in that the erection of the sign is violation of Chapter 6 Section 76 of the Code of Ordinances."

The next day, May 26, 2006, City sent a letter to Pinnacle's representative that read, in pertinent part:

Please be advised that the above referenced permit is hereby suspended and that all work related to the construction must cease at the job site immediately. This action is being taken due to the fact that the site plan provided with the permit application indicated that the proposed sign is to be located exactly 150 feet from the public park to the east and dimensions this distance from the east line of Lot 8, Block 2, Smart's Second Addition. This distance is required to be measured from the public park, which begins at the west curb line of Locust Street. Therefore, the information provided in the application is incorrect due to the fact that the proposed sign is within 150 feet of the public park. Additionally, this property is located within the horizontal control surface of the Downtown Airport as defined by Chapter 6, Code of Ordinances. The horizontal control surface elevation is 908 feet above sea level and the top of the proposed sign is approximately 1021 feet above sea level. Section 6–76 prohibits structures in excess of the horizontal control surface elevation except those structures which have been determined to be no hazard to air navigation by the Federal Aviation Administration. No documentation related to this issue was provided with the application for sign permit.

On June 13, 2006, Pinnacle filed its application to the BZA appealing City's suspension of the permit for the billboard, and the BZA held a hearing on August 22, 2006. At the conclusion of the hearing, the BZA determined to uphold City's suspension of the permit. Written notice of the BZA's decision was sent to Pinnacle on August 30, 2006.

On September 21, 2006, Reiz and Porlier, as successor to Pinnacle (to all of whom this opinion will hereinafter collectively refer as "Porlier"), filed a petition for review, injunction, and writ of certiorari with the trial court. The petition was subsequently amended and the parties filed their briefs before the trial court.

On February 7, 2008, the property on which the billboard had been erected was condemned in the case captioned *Tax Increment Financing Commission of Kansas City v. Ten Oak Center, Ltd., et al.,* Case No. 0716–CV30164, also in the Circuit Court of Jackson County. On April 10, 2008, a panel of three appointed Commissioners filed a report assessing damages to Porlier on the condemnation of the billboard at $110,000. Exceptions to the Commissioners' award were filed,[1] and the award was paid into the court. The billboard and parking lot were then dismantled and removed by the new property owner.

On June 3, 2008, Porlier filed with the trial court additional suggestions in support of the petition to reverse the decision of the BZA, requesting the trial court to dismiss the action as moot. Porlier did not voluntarily dismiss its petition. On November 3, 2008, a hearing was held in the trial court wherein Porlier attempted to introduce additional evidence as to the merits of the petition. The court refused to admit the evidence. On February 9, 2009, the trial court entered an order affirming the decision of the BZA. This appeal follows.

## Standard of Review

■ When a party appeals a trial court's ruling on the propriety of an administrative decision, we review the decision of the Board, not of the trial court. *State ex rel. Teefey v. Bd. of Zoning Adjustment,* 24 S.W.3d 681, 684 (Mo. banc 2000). We review zoning board decisions to determine whether they are supported by competent and substantial evidence on the record as a whole, or whether they are arbitrary and capricious, unreasonable, unlawful, or in excess of the Board's jurisdiction. *Id.*

## Legal Analysis

For its first point on appeal, Porlier claims that the trial court erred in refusing to dismiss Porlier's own petition for certiorari on the grounds that it had become moot. Specifically, Porlier contends that since the billboard had been dismantled and removed, there was no longer a justiciable controversy between Porlier and the BZA or the City, and therefore the action should have been dismissed by the trial court. Porlier contends that our review of the trial court on this matter is *de novo.* However, as stated above, this court does not review the decision of the trial court but, instead, reviews the decision of the BZA. *Id.* Therefore we would not in any case review the trial court's refusal to dismiss the matter but would, necessarily, review the decision of the BZA instead.

■ Moreover, we need not reach the issue of mootness before the trial court, because if the action had been moot before the trial court, it would necessarily also be moot here. Mootness is a threshold issue in any appellate proceeding, and so it may be considered by an appellate court *sua sponte. Hihn v. Hihn,* 235 S.W.3d 64, 67 (Mo.App. E.D.2007). A determination of

---

1. Although it is unclear from the briefing, the parties represented at oral argument that the TIF Commission filed the initial objections to the Commissioners' award and that Porlier then countered with exceptions of its own. The condemnation proceeding has been stayed pending the resolution of this appeal.

mootness usually warrants dismissal by the appellate court outright, without having first passed on the propriety of the actions taken by the trial court. *See State ex rel. Claudia Lee & Assocs., Inc. v. Bd. of Zoning Adjustment,* 297 S.W.3d 107, 111–12 (Mo.App. W.D.2009). An action that would otherwise be moot may be considered by an appellate court, however, in several situations: (1) where the action becomes moot after it has been argued and submitted; (2) where the issue is one of general public interest and importance, which is capable of recurring and likely to evade appellate review, *id.* at 111 n. 6; or (3) where the court or administrative decision being appealed could have significant collateral consequences for one or more of the parties to the appeal. *Glover v. Michaud,* 222 S.W.3d 347, 351 (Mo.App. S.D. 2007). We may consider facts established outside the record-on-review in determining whether a matter is moot. *Claudia Lee,* 297 S.W.3d at 111.

■ City contends that the appeal is not necessarily moot because this court's determination could have consequences for the collateral condemnation action. An award of damages was assessed by the three-Commissioner panel and the award was paid into the court. However, both parties have since filed exceptions to the condemnation award and the case has been stayed pending this appeal. Once exceptions are filed, the amount of damages becomes an issue and the parties are entitled to a jury trial to determine the proper award of damages. One of the issues in the calculation of damages in the condemnation case is arguably the value of the lease interest in the billboard. Because City contends and the BZA found that the sign was illegal in that it violated a City ordinance by being within 150 feet of a public park, City argues that the lease (the purpose of which was construction of and maintenance of the sign) had no value and, therefore, that the $110,000 damage award was excessive. City thus argues that this court's ruling as to the legality of the billboard will have collateral consequences in the condemnation action, and therefore this action is not moot.

Porlier, on the other hand, contends that this court's ruling will have no collateral consequences. It claims that once the Commissioners' award had been made and the damages had been paid into court, the Commission took title to the property, including the billboard, and was responsible for compensating Porlier for the value of both the property and the billboard at that moment. Porlier cites *State ex rel. State Highway Commission v. Volk,* 611 S.W.2d 255 (Mo.App. E.D.1980).[2]

While we agree with the premise in *Volk,* it does not necessarily mean that the Commissioners' award to Porlier is unalterable. Certainly title passed while the billboard was still standing, and Porlier was not allowed to remove the billboard, so if the billboard structure had value, Porlier should be compensated for the value of the billboard structure. However, the exceptions provisions to the condemnation process allow for a challenge to the value. A

---

**2.** *Volk* involved a sign-owner whose lease had expired, but who was continuing to pay rent. 611 S.W.2d at 256. The terms of the lease expressly allowed for the tenant to remove the signs after termination of the lease. *Id.* The landowner eventually stopped accepting rent and filed an unlawful detainer against the tenant. *Id.* While the unlawful detainer was still pending, a condemnation petition was filed and an award was paid into the court. *Id.* at 258. The Eastern District of this court held that when the property was condemned, the condemning authority took title to the property as it existed at that time, including the signs on the property, and that a portion of the condemnation award was to go to the owner of the signs, regardless of whether they were properly on the land. *Id.* at 259.

jury will now determine the value of the condemned property *de novo*, without knowledge of any award by the Commissioners or its rationale. §§ 523.050, 523.060. Evidence of the fair market value of the property at the time of the taking might include a valuation based upon an income approach. A decision from this court addressing the validity of the BZA determination could affect the jury's damage award. Clearly, since it stayed the case, the condemnation court felt that this court's ruling was relevant. We find that the possibility of its relevance to the jury in the condemnation case dictates that the appeal of the BZA determination is not moot. Porlier's first point is denied.

■ Porlier's second point on appeal is that the BZA decision was arbitrary, illegal, and void in that it found that section 80–220(e)(1)(c) of the Kansas City Missouri Code of Ordinances requires that a billboard shall not be within 150 feet of property being used as a public park, instead of 150 feet from the park's right-of-way setback line.[3] At the time the application for the billboard permit at issue was filed, section 80–220(e)(1)(c) read, "Outdoor advertising signs shall not be located within 150 feet of a public park, playground, school, library, auditorium, stadium or other publicly owned buildings used by the general public, unless such signs, including the support structures, are not visible from the property."[4] The dispute centers on the City's and BZA's interpretation of the word "park."

Porlier maintains that because section 80–20 of the ordinances defines public park as "any city, county, state or federal public park," the park boundaries indisputably must be measured from what Porlier calls the property line, which is the edge of the City right-of-way. This right-of-way line is roughly twelve feet in from the curb line. The City counters, and the BZA found, that public park was more properly interpreted as land that is being used as a public park. Because the City's parks department improved the property all the way to the curb line as part of the park development project, and the right-of-way area includes sidewalks, landscaping, lighting, granite pavers, and even a memorial for City employees who lost their lives in service to the City, City maintains that the whole right-of-way area up to the curb line is currently being used as public property, and should thus be protected by the 150–foot buffer area.

City cites *State ex rel. State Highway Commission v. Wiggins*, 454 S.W.2d 899, 903 (Mo. banc 1970), to support its position. In *Wiggins*, the applicable statute prohibited junkyards within 200 feet of a "road." *Id.* at 902. The Missouri Supreme Court, in interpreting whether "road" meant the edge of the right-of-way easement, the edge of the paved portion of the right-of-way, or something else, looked first to the plain and ordinary meaning of the word. *Id.* at 903. Finding that unhelpful, the court looked to how the word was used in other statutes, and then, to the purpose of the statute before the court to determine the intent of the legislature.

---

**3.** As evidence of the arbitrariness of the BZA's decision, Porlier points to the two differing justifications the City had given for the stop work order, questions the motivation of City in issuing the stop work order, and directs the court to a newspaper article chastising the City for its mistake in the application process. The court notes that this article also indicates that Porlier had known about the imminent

condemnation for quite some time and that the billboard was erected to increase the value of the property. We find neither party's motives relevant to our review of the BZA's decision.

**4.** The ordinance now requires a buffer of 250 feet.

*Id.* The court stated that "[t]he obvious purpose of [the statute] was to require that junk yards be screened from the view of the persons using the road, or that the portion of a junk yard nearest to a road be located not less than 200 feet from persons normally using the road." *Id.* It went on to say that "[a] use of a road 'in the ordinary manner' obviously refers to a use of that portion which has been prepared and adapted to travel [the pavement]; it would not refer to a use of the ditches, slopes, or grass-covered areas extending to what is referred to as the right-of-way line." *Id.*

We find *Wiggins* very persuasive. We also disagree with Porlier that the ordinance's definition of the term "public park" makes Porlier's interpretation a foregone conclusion. The ordinance basically defines "park" as "park," which we find is no less open to interpretation than was the word "road." Here, as in *Wiggins*, the purpose of the ordinance is obviously to shield from the view of people using the park something that they might find unsightly, in this case, billboards. In *Wiggins* the court noted that people commonly using the road would not be down in the ditches or grassy areas that surrounded the road and were within the right-of-way, and so the more appropriate measure was from the paved area. *Id.* Here, people using the park could very well extend their park use into the right-of-way area, especially since the right-of-way has been improved as part of the park project and is not noticeably separate from the remainder of the park property. Indeed, the memorial, one of the park's features, is within the right-of-way area. Accordingly, we find the BZA's interpretation to be reasonable and not unlawful, arbitrary, or capricious.

Porlier also contends that the BZA's interpretation would make compliance with the statute difficult if not impossible due to the uncertainty of measuring from the curb line instead of the metes-and-bounds-described right-of-way line. This apparently was not a concern for the court in *Wiggins*, and we do not find it to be problematic here. And while Porlier contends that curb lines can be changed, so too can the width of roads, a fact that the *Wiggins* court apparently did not find problematic. Any changes that could potentially cause problems for particular landowners close to the compliance lines can be addressed by the City on a case-by-case basis. We find that measurement from the curb line of the park in most if not all cases can be determined without great difficulty.

▆▆▆▆ Finally, City points out that the right-of-way as a boundary to park property is particularly inappropriate when the park is a City park, because City owns the underlying fee. The right-of-way is actually an easement on the underlying property or servient tenement—the park. When a tract of land has one ownership, there can be no dominant and servient tenements. *See Gardner v. Maffitt,* 335 Mo. 959, 74 S.W.2d 604, 606–07 (1934). In this case, when City acquired the land to be used as Ilus W. Davis Park, the dominant tenement (right-of-way) already held by City merged with the servient tenement (park land). *See Bolomey v. Houchins,* 227 S.W.2d 752, 756 (Mo.App.1950). Now that City owns the whole of the park site, there is no reason to arbitrarily sever what is defined as park land at the line of the former right-of-way easement. Porlier's second point is also denied.

▆▆▆▆ For its final point on appeal, Porlier contends that the trial court erred in refusing to admit evidence submitted by Porlier at a hearing before the court. We review the trial court's refusal to take evidence for abuse of discretion. *Nenninger v. Dep't of Soc. Servs.,* 898 S.W.2d

112, 116 (Mo.App. S.D.1995). Pursuant to section 89.110 RSMo 2000, a court reviewing a decision of an administrative board may take additional evidence if it appears necessary to the court. However, the trial court's admission of new evidence is limited to that which would affect the procedural legality of the board's proceeding; it is not a second chance for a party to offer evidence as to the merits of its case. *See State ex rel. Remy v. Alexander,* 77 S.W.3d 628, 632 (Mo.App. S.D.2002). Otherwise, court review of a board decision would effectively be a *de novo* review of the merits, which is not the purpose of judicial review under section 89.110. *Id.*

Porlier sought to introduce the testimony of two witnesses, both surveyors, to show that Porlier's interpretation of the term "public park" was superior to that adopted by the BZA. This testimony was not presented to the BZA but to the trial court in the first instance, and it does not implicate the legality of the procedures before the BZA but goes to the merits. Accordingly, the trial court was entirely within its discretion to have excluded the evidence. Point three is denied.

### Conclusion

For all of the above reasons, we affirm the decision of the Board of Zoning Adjustment of Kansas City.

JAMES EDWARD WELSH, Presiding Judge, and MARK D. PFEIFFER, Judge, concur.