**MISSOURI TITLE LOANS, INC., Respondent,**

v.

**CITY OF ST. LOUIS BOARD OF ADJUSTMENT, Appellant.**

No. ED 77866.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 1, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 13, 2001.

Application for Transfer Denied
Jan. 22, 2002.

---

1. *State ex rel. Chassaing v. Mummert,* 887 S.W.2d 573, 576 (Mo. banc 1994).

2. *Id.*

3. 57 S.W.3d 855 (Mo. Banc 2001).

4. *State ex rel. DePaul Health Center v. Mummert,* 870 S.W.2d 820, 823 (Mo. banc 1994).

Edward J. Hanlon, Deputy City Counselor, St. Louis, MO, Attorneys for Appellant.

Martin M. Green, Jonathan F. Andres, Green, Schaaf, Margo, Jacobson, P.C., Clayton, MO, Attorneys for Respondent.

SIMON, Judge.

City of St. Louis Board of Adjustment (Board) appeals from the judgment of the Circuit Court of the City of St. Louis in favor of Missouri Title Loans, Inc. (Title Loans) which sought review of the Board's decision denying Title Loans' application for a conditional use permit. However, pursuant to Rule 84.05(e), if the circuit court reverses a decision of an administrative agency, the appellate court reviews the decision of the agency rather than of the circuit court, and the party aggrieved by the agency decision shall file the appellant's brief.

On appeal, Title Loans contends that the Board erred in: (1) finding that Title Loans is not a "financial institution" as defined in St. Louis, MO., Code Section 26.08.162 (1994) (all further references herein shall be to St. Louis, MO., Code (1994) unless otherwise indicated) because although it only offers secured loans to consumers, Title Loans meets the definition of that term in Section 26.08.162 in that (a) it offers secured personal loans similar to a bank or savings and loan and (b) is regulated by state authority; (2) not deciding a question of fact in that Title Loans timely appealed to the Board that it qualified as a "general office" under Section 26.40.020(O), but the Board failed to decide this question of fact and to make a decision based on the evidence presented; and (3) finding that Title Loans did not satisfy standards for conditional use due to alleged additional noise, pollution, traffic

and security problems which might be generated because there was no competent and substantial evidence that the branch office would be detrimental to the neighborhood in that it would decrease property values, increase traffic and attract undesirable business invitees. We reverse and remand the judgment of the trial court with directions to enter a judgment affirming the decision of the Board of Adjustment.

■■■■ On appeal of the trial court's decision on a petition to review the decision of the Board, we review the decision of the Board, not the judgment of the trial court. *State ex rel Teefey v. Board of Zoning Adjustment,* 24 S.W.3d 681, 684 (Mo.banc. 2000). The scope of review is limited to determination of whether the Board's action is supported by competent and substantial evidence upon the whole record or whether it is arbitrary, capricious, unreasonable, unlawful or in excess of its jurisdiction. *Id.* In determining whether substantial evidence exists to support the Board's decision, an appellate court is to view the evidence, along with its reasonable inferences, in a light most favorable to the Board's decision. *Id.* In reviewing the legality of the decision, the reviewing court should hold the decision to be illegal and void if the Board exceeds the authority granted to it. *Id.* A question of law is a matter for the independent judgment of the reviewing court. *Id.*

Title Loans, a Missouri corporation, applied for an occupancy permit to operate a title loan store at 6427 Chippewa on November 20, 1998. Title Loans is a wholly owned subsidiary of Title Loans of America, Inc., which has over 250 branches in more than 20 states, including more than 25 title loan offices throughout the State of Missouri.

As a title lender, Title Loans offers small, short term loans, secured by the borrower's car title. State law limits the interest rates on the loans to 1½% per month or 18% per year. The Division of Finance of the State of Missouri licensed and currently regulates the company.

City of St. Louis ("City") accepted Title Loans' application for an occupancy permit for use designated as "Office Space (Title Loans)" and issued the permit for the premises the same day. On January 5, 1999, the City notified Title Loans that a conditional use hearing was scheduled for January 19, 1999, to consider the company's application to occupy the premises and offer title loans in a F–Neighborhood Commercial District. On January 19, 1999, at the conditional use hearing, a hearing officer for the Board of Public Service recommended the conditional use permit be denied and the Board of Public Service adopted that recommendation.

On February 24, 1999, Title Loans appealed this decision to the Board, requesting the issuance of a permit authorizing the applicant to "occupy and use the premises to operate a title loan store" and alleging "[the Board] has agreed to conditions of use that meet the standards in [Chapter 26.80.010] and the proposed use is now supported by [Alderman James Sondermann] and [the Lindenwood Neighborhood Association]."

Title Loans later filed an amended appeal on May 18, 1999, again seeking to occupy the premises as a title loan store, requesting the issuance of a permit authorizing the applicant to "occupy and use the premises to operate a title loan store" and alleging the following:

> Missouri Title Loans may operate a title loan store at 6427 Chippewa without a Conditional Use Permit because it is a financial institution as defined in [Chapter 26.08.162]. In the alternative, Missouri Title Loans should receive a

Conditional Use Permit because it will operate a business that meets the standards for a Conditional Use Permit under [Chapter 26.80.010].

Section 26.40.015 defines the F–Neighborhood Commercial District's purpose as the following:

> ...to establish and preserve those commercial and professional facilities that are especially useful in close proximity to residential areas. The district is designed to provide convenient shopping and servicing establishments for persons residing in the immediate neighborhood to satisfy those basic home and personal shopping and service needs which occur frequently and so require retail and service facilities in relative proximity to places of residence, so long as such uses are compatible with and do not detract from adjacent residential uses.

Chapter 26.40 sets forth permitted and conditional uses of property within the F–Neighborhood Commercial District. Section 26.40.020 provides permitted uses within the F–Neighborhood Commercial District to include the following: "any use permitted in the 'E' Multiple–Family Dwelling District," art galleries and studios, barber and beauty shops, bookstores, computer stores, drug stores, dry cleaning stations (not having on-site processing), financial institutions, florists, general offices, grocery and other retail stores, hardware stores, professional offices and video and record stores.

Section 26.08.104 defines conditional use of property as "a use not authorized as a matter of right by regulations of the district in which use is proposed to be located but subject to being authorized for such district by action of the Zoning Administrator. The appropriateness of a particular use is to be determined based on the requirements and standards specified in Section 26.80." Section 26.40.025 sets out the conditional uses that may be allowed in the F–Neighborhood Commercial District, subject to the provisions of Section 26.80, including "any use eligible to be a conditional use in the 'E' Multiple–Family Dwelling District," bar and taverns, package liquor stores, parking lots, private clubs or lodges, theaters, and "[c]ommercial uses similar to those permitted in Section 26.40.020."

Section 26.80.010(E) sets forth the following five standards to consider when granting a conditional use:

1. The use will not be detrimental to the public health, safety, morals or general welfare;

2. The use will not cause serious injury to the neighboring properties by hindering use or reducing or impairing property values;

3. The use will contribute to, enhance, and promote the general welfare and convenience of the specific location;

4. The use will complement or be compatible with the surrounding uses and will not have a negative impact on adjacent uses or community facilities; and

5. The use shall, in all other respects, conform to the applicable zoning regulations and standards, including without limitation the particular regulations and standards stated for particular conditional uses in the various zoning districts.

In a memorandum submitted to the Board during the public hearing and marked as Exhibit N, Title Loans contended that its proposed use is allowed as general offices under Section 26.40.020 and also as a financial institution under Section 26.40.020. Secondly, Title Loans argued its proposed use meets the standards necessary for a conditional use permit.

During the Board hearing, five individuals testified in opposition to Title Loans' request. Alderman James Sondermann, the alderman for the ward in which the premises is located, testified in opposition to the conditional use permit application, expressing concerns he and the neighborhood organizations had about the exterior appearance of the property and the adverse impact the proposed use would have on property values in the surrounding community and attracting businesses to the area.

In addition, four residents of the surrounding community testified in opposition to Title Loans. First, Ms. Marie Celeski testified that she considered title loans stores to be similar to payday loans operations and pawnshops, which many people associate with desperate people who have alcohol, gambling or drug problems. Secondly, Dan Haggerty testified that five lending institutions within a half mile radius of the subject property already existed. Thirdly, Ann Kofron testified about her belief that the operation of a title loan store would lower area property values. Fourth, Cara Ax testified that she was concerned about safety because of the operation of a title loan business that would have a significant amount of cash on its premises.

At the hearing, Mr. Wayco, Vice President of Business Development for the parent company of Title Loans, testified that the subject property would be equipped with a silent alarm and would operate during daylight hours; the amount of cash on the site would be kept to a minimum and may reach a maximum of $2,000 at peak times; funds to be deposited would be kept in an FDIC approved Fire King vault on the site; and that instances of customer fraud are rare.

Further, Title Loans submitted to the Board a copy of a letter from the Florissant Police Department describing the results of its investigation into safety concerns with the business. In his letter, Officer James Cox of the Crime Prevention Unit stated, "I contacted four Police jurisdictions wherein an existing Missouri Title Loan Company operates their business. In speaking to each of the respective departments I learned there have been NO calls for service, problems, complaints, nor any areas of concern relative to the police departments." (emphasis in original)

Title Loans also submitted an affidavit by William Krodinger, a real estate appraiser and owner of Krodinger Appraisal Service. Krodinger was asked to evaluate Title Loans' intended use of the premises and the nature of its business and to offer his expert opinion on its impact on the surrounding community. Following his investigation, Mr. Krodinger testified that a title loan store would not hinder the use of surrounding properties or reduce or impair property values. He also testified that "...the improvements [Title Loans] proposes to make to the property as well as the type of consumer finance business it seeks to operate will, at a minimum, help stabilize property values in the neighborhood and surrounding community."

The Board denied the issuance of a conditional use permit, stating the following:

The Board finds that the proposed operation is a conditional use in the "F"' Neighborhood Commercial District. It is not a financial institution as defined and used in the Zoning Code because it only offers a single transaction of title loans and it does not provide the typical and normal services of a financial institution. It is similar to a commercial use and therefore comes within the conditional use in Section 26.40.025.

The Board finds that the proposed use would be detrimental to the public safety

and general welfare and would reduce and impair property values because of the additional noise, pollution, traffic (both vehicle and pedestrian), and security problems (due to cash on the premises) which the business would generate.

The Board also finds that the proposed use would not enhance, contribute or promote the general welfare and convenience of the specific location because of additional traffic, both vehicle and pedestrian, pollution and noise generated.

The Board finds that the use will not complement or be compatible with the surrounding uses, especially residential property, and because of the additional noise, pollution and traffic (both vehicle and pedestrian) generated, the proposed use would have a negative impact on adjacent uses, especially residential property.

Title Loans filed a petition for writ of certiorari in the circuit court. On July 15, 1999, the trial court reversed the Board's decision and ordered that Board issue a conditional use permit to use the property as a title loan store. The trial court found that "...a business that is engaged in the provision of loans or financing to customers is, if not a 'financial institution,' of a sufficiently similar nature as to qualify for a conditional use permit, assuming the other requirements for such permit are met." A financial institution is a *permitted* use within the F–Neighborhood Commercial District, however, in ordering a *conditional* use permit be issued the trial court apparently found that Title Loans qualified as a conditional use in the "E" Multiple–Family Dwelling District, which includes a financial institution as a conditional use. According to Section 26.40.025, "any use eligible to be a conditional use in the 'E' Multiple–Family Dwelling District" is also a conditional use that is allowed in the F–Neighborhood Commercial District.

■ Title Loans' first point is that the Board erred in finding that it is not a "financial institution" as defined in Section 26.08.162 because, although it only offers secured loans to consumers, Title Loans meets the definition of that term as set out in Section 26.08.162 in that (a) it offers secured personal loans similar to a bank or savings and loan and (b) is regulated by state authority. The Board contends that it did not err in denying Title Loans' request because Title Loans' proposed title loan store is not a financial institution under Section 26.08.162 in that it performs only one of the numerous functions performed by a traditional financial institution.

■ In interpreting city zoning regulations, we are to ascertain and give effect to the intent of the legislature. *Teefey*, 24 S.W.3d at 684. Words contained in an ordinance should be given their plain and ordinary meaning and should be interpreted to avoid absurd results. *Id.* Where a phrase or term is specifically defined by ordinance, such particular definition is binding on the court and must be given effect. *Id.*

Section 26.08.162 defines "financial institution" as follows: "an establishment that is engaged in the business of a bank, savings and loan association or other similar institution that is regulated by state or federal authority. Such establishment includes, without limitation, an office building or portion thereof devoted to such use, a drive-up facility, and a facility containing one or more automated teller machines."

■ Whether a title loan store is a "similar institution" pursuant to Section 26.08.162, we note that: "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Alumax Foils,*

*Inc. v. City of St. Louis,* 959 S.W.2d 836, 838 (Mo.App. E.D.1997). Where the specific terms or phrases identify a class, the particular words restrict the meaning of the general, catchall phrase by treating the similar words as indicating the class and the general words as extending the provisions of the statute to everything embraced in that class. *Id.*

"Similar institution" are general words that follow more specific words—"bank" and "savings and loan association." Therefore, the terms "bank" and "savings and loan association" restrict the meaning of "similar institution" to a particular class. Since Section 26.08.162 defines a financial institution as being "... regulated by state or federal authority," we will look to state authority to determine the meaning of "bank" and "savings and loan association."

Section 362.010(3) RSMo 1997 defines "bank" as "any corporation soliciting, receiving or accepting money, or its equivalent, on deposit as a business, whether the deposit is made subject to check, or is evidenced by a certificate of deposit, a passbook, a note a receipt, or other writing." In addition, although Chapter 369 RSMo 1997 does not contain a definition of "savings and loan association" explicitly, a review of the chapter indicates that such an association is engaged in business similar to that of a bank.

A title loan store is not a bank or savings and loan association, or similar to one, in that it does not engage in the business of "...soliciting, receiving or accepting money, or its equivalent, on deposit as a business...." Therefore, we conclude that the Board's decision to deny Title Loans an occupancy permit on the basis that Title Loans' proposed use does not qualify as a financial institution is not erroneous.

In its second point, Title Loans contends that the Board erred in not deciding a question of fact. Title Loans ar-gues that it timely appealed to the Board that it qualified as a "general office" under Section 26.40.020(O), but the Board failed to decide this question of fact and to make a decision based on the evidence presented.

Initially, City accepted Title Loans' application for an occupancy permit for use designated as "Office Space (Title Loans)" and issued a building permit for the premises which was later denied by Board. However, Title Loans did not specifically indicate in its appeal or amended appeal that it intended to use the property for general office purposes. In the memorandum submitted to Board at the hearing entitled "Appeal to the Board of Adjustment" and marked Exhibit N, Title Loans contends that its proposed use is allowed as general offices under Section 26.40.020 and also as a financial institution under Section 26.40.020. However, Board contends that document was a post-hearing brief.

In any event, whether or not Title Loans properly preserved in its appeal to the Board that it intended to use the property for general office purposes, a title loan store would not qualify for a designation as general offices. We agree with the trial court that "...general offices refers to business offices where employees work internally for the business and do not have customer contact as a regular part of their jobs...this category does not consist of a retail or service establishment which involves direct contact with the public." Therefore, Title Loans' second point is denied.

Title Loans' third and final point is that the Board erred in denying Title Loans' request for a conditional use permit because there was not competent and substantial evidence presented that Title Loans' proposed use of the property would

be detrimental to the neighborhood in that it would decrease property values, increase traffic and attract undesirable business invitees.

During the hearing, City submitted letters from Alderman Sondermann and Alderman James Shrewbury, state representative Harry Kennedy and a neighborhood organization, expressing their opposition to the proposed use. Moreover, Alderman Sondermann testified that the title loan store would have an adverse impact on property values in the surrounding community and attracting businesses to the area. In addition, several residents of the surrounding community testified in opposition to Title Loans. First, Ms. Marie Celeski testified that she considered title loans stores to be similar to payday loans operations and pawnshops, which many people associate with undesirable business invitees. Second, Ann Kofron testified to her belief that the operation of a title loan store would lower their property values. Third, Cara Ax testified that she was concerned about safety because of the operation of a title loan business that would have a significant amount of cash on its premises.

We find that the Board did not err in denying Title Loans' request for a conditional use permit because there was competent and substantial evidence supporting the Board's decision.

Judgment reversed and remanded with directions to enter judgment affirming the decision of the Board of Adjustment.

MOONEY, P.J., and SULLIVAN, J., concur.