HHC MEDICAL GROUP, P.C., d/b/a
The Heart Health Center, Plain-
tiff/Appellant/Cross–Respondent,

v.

CITY OF CREVE COEUR BOARD OF
ADJUSTMENT, et al., Defendants/Re-
spondents/Cross–Appellants.

No. ED 81302.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 25, 2003.

Steven W. Koslovsky, Blumenfeld, Kaplan & Sandweiss, P.C., Law Offices, St. Louis, for Appellants.

Williard Dudley McCarter, Behr, McCarter & Potter, P.C., Law Offices, St. Louis, for Respondent.

*Introduction*

SHERRI B. SULLIVAN, Judge.

HHC Medical Group, P.C., d/b/a The Heart Health Center (HHC), appeals from a trial court judgment affirming the decision of the City of Creve Coeur Board of Adjustment (the Board) to deny HHC's sign permit application. The Board cross-appeals from the trial court judgment arguing that the trial court lacked jurisdiction. We affirm the trial court judgment and dismiss the Board's cross-appeal.

*Factual and Procedural Background*

HHC is one of about seventeen tenants in a medical office building (Medical Plaza), known and numbered as 450 North New Ballas Road, located in Creve Coeur, Missouri. Medical Plaza currently consists of a North, a South, and a West Wing. The North Wing and the South Wing were constructed in 1984. The West Wing was constructed in 1999. HHC leases one of three floors of offices in the West Wing. Medical Plaza has one exterior wall identification sign facing North New Ballas Road.

Under its lease with the owner of the property, HHC has the right to install an identification sign on the western facing exterior wall of the West Wing of Medical Plaza, subject to the approval of the City of Creve Coeur (the City). In April 2001, HHC applied to the City for a sign permit to install an exterior wall identification sign facing North New Ballas Road. The City denied HHC's application because Medical Plaza already has one exterior wall identification sign facing North New Ballas Road, the maximum signage allowed by Section 26–104.2(d) of the City's Zoning Ordinance.

HHC appealed the City's denial of its sign permit application to the Board, arguing that the West Wing is a freestanding building and is entitled to its own exterior wall identification sign. After a two-day hearing, the Board affirmed the City's denial of HHC's application by a 2—2 vote, with only four of the five Board members present.[1] Under Section 89.090,[2] four concurring Board member votes are necessary to reverse a decision of an administrative official. Therefore, the Board concluded that the West Wing of Medical Plaza is not a freestanding building under Section 26–104.2(d) of the City's Zoning Ordinance.

In August 2001, HHC filed a Verified Petition for Writ of Certiorari (Petition) with the trial court pursuant to Section 89.110. The trial court issued the writ and the Board filed an Answer and Return to Writ of Certiorari with the trial court.

In December 2001, the Board filed a Motion to Dismiss with the trial court arguing that HHC did not deliver a copy of the Petition to "each party of record in the proceedings before the agency," as required by Sections 89.110 and 536.110 and *Wolfner v. Bd. of Adjustment of the City of Warson Woods*, 39 S.W.3d 76 (Mo.App. E.D.2001), and therefore the trial court lacked jurisdiction. Specifically, the Board argued that HHC presented no proof to

---

1. HHC agreed to proceed with the hearing with only four of the five Board members present.

2. All statutory references are to RSMo. (2000), unless otherwise indicated.

the trial court that adjacent property owners who participated in the Board hearing were given a copy of the Petition or otherwise given notice of the trial court proceeding.

In February 2002, after oral argument, the trial court entered a judgment affirming the Board's decision as being supported by competent and substantial evidence upon the whole record and not arbitrary, capricious or in excess of its jurisdiction. The court did not rule on the Board's Motion to Dismiss. Subsequently, HHC filed a Motion to Vacate Judgment to allow notice to parties of record appearing before the Board, which the trial court granted.

In March 2002, HHC provided to all parties of record notice of the filing of the Petition as well as a copy of the Petition. HHC filed with the trial court proof of service of the notice.

Subsequently, the Board filed a Second Motion to Dismiss. The motion presented essentially the same basis for dismissal as the first motion, with an additional emphasis on the parties of record not being given "timely notice."

In May 2002, the trial court entered its judgment, recognizing that more than thirty days had passed since the adjacent property owners received notice and that none of the notified individuals expressed an interest to the court or to the parties in participating in the action. The trial court again entered a judgment affirming the Board's decision as being supported by competent and substantial evidence upon the whole record and not arbitrary, capricious or in excess of its jurisdiction. The court also denied the Board's Second Motion to Dismiss with the following explanation:

> There is no dispute that all participants at the Board hearing were given written notice and an opportunity to intervene, but have failed to do so. The Court finds the notice timely, and even if it was not, there is no showing of prejudice, especially in light of the Court's ruling in favor of those individuals' position in opposition to [HHC's] request.

HHC appeals from the judgment. The Board also cross-appeals from the judgment.

## Standard of Review

We review the decision of the Board, not the judgment of the trial court. *Missouri Title Loans, Inc. v. City of St. Louis Bd. of Adjustment,* 62 S.W.3d 408, 411 (Mo.App. E.D.2001). The scope of review is limited to determining whether the Board's decision is supported by competent and substantial evidence upon the whole record or whether the decision is arbitrary, capricious, unreasonable, unlawful or in excess of the Board's jurisdiction. *Id.* In determining whether competent and substantial evidence exists to support the Board's decision, we view the evidence, along with all reasonable inferences therefrom, in the light most favorable to the decision. *Id.* In determining the legality of the Board's decision, we hold the decision to be illegal and void if the Board exceeds the authority granted to it. *Id.* A question of law is a matter for our independent judgment. *Id.*

## Discussion

### I. Direct Appeal

■ In its point on appeal, HHC argues that the Board's decision is not supported by competent and substantial evidence and is contrary to law because the overwhelming weight of the evidence established that the West Wing is a freestanding building, as the term is used in the City's Zoning Ordinance, and the Board misinterpreted the ordinance.

Section 26–104.2(d) of the City's Zoning Ordinance provides in relevant part:

26–104.2 On–Premises Permanent Signs.

. . .

(d) Office building signs.

1. Each freestanding, single or multi-tenant office building may have one (1) wall sign per sign frontage.

Section 26–100 of the City's Zoning Ordinance outlines the purpose and intent of the sign regulations and provides:

The purpose of these regulations is to encourage the effective use of signs as a means of communication, to maintain and enhance the aesthetic appearance of the City, and to facilitate and improve pedestrian and vehicular traffic safety. These regulations are intended to promote the public health, safety and general welfare through a comprehensive set of reasonable standards and requirements. This Article is further intended to allow for the identification of places of commerce, the communication of public and commercial information necessary for efficient and safe traffic movement; to allow for freedom of speech in a manner acceptable to the community and within good taste; to protect the public from the dangers of unsafe signs; to lessen hazardous situations, confusion and visual clutter caused by a proliferation of signs competing for the attention of pedestrian and vehicular traffic; and to enhance the attractiveness and economic well-being of the City of Creve Coeur. These regulations are not intended to prohibit the erection or display of a sign with a political message or a sign advertising a premises for sale, lease or rent.

The interpretation of an ordinance is a question of law. *State ex rel. Sunshine Enterprises of Missouri, Inc. v. Bd. of Adjustment of City of St. Ann,* 64 S.W.3d 310, 312 (Mo. banc 2002). However, the interpretation given to the language by the body in charge of its enactment and application is also entitled to great weight. *Barr v. City Council of City of Chesterfield,* 904 S.W.2d 27, 31 (Mo.App. E.D. 1995). In construing city ordinances, we apply the same general rules of construction as are applicable to state statutes. *State ex rel. Teefey v. Bd. of Zoning Adjustment of Kansas City,* 24 S.W.3d 681, 684 (Mo. banc 2000). We ascertain and give effect to the intent of the enacting legislative body. *Id.* Words contained in an ordinance should be given their plain and ordinary meaning and should be interpreted to avoid absurd results. *Id.* Where a phrase or term is specifically defined by ordinance, such particular definition is binding on the court and must be given effect. *Id.*

The City's Zoning Ordinance does not define "freestanding." When a term is not defined, we refer to the dictionary to find the meaning that the legislature intended. *Fisher v. Waste Management of Missouri,* 58 S.W.3d 523, 526 (Mo. banc 2001). "Freestanding" is defined as:

1. (of sculpture, structure, etc.) unattached to a supporting unit or background; standing alone. 2. not affiliated with others; autonomous: *a freestanding clinic.*

Random House Webster's College Dictionary 522 (2nd ed.1999).[3]

In the light most favorable to the Board's decision, the following evidence was adduced at the Board hearing. A July 1997 letter from the West Wing's architects to the City Planner describes the

---

**3.** We note that the City's Zoning Ordinance was revised in January 2000 so we utilize a dictionary contemporary to that time period. *See Fisher,* 58 S.W.3d at 526.

West Wing as an "expansion" to Medical Plaza. The letter also states that the "proposed expansion meets the intent of the Planned Office District by connecting the proposed expansion onto the existing building so the overall plan still works as one cohesive planned medical services facility." The letter further states that the "building addition is actually located on the 'front side' of the site. . . ." An August 1997 memorandum from the City Planner to the Planning and Zoning Commission describes the West Wing as an "addition" to Medical Plaza that "extends west from the existing structure." At the hearing, the City Planner testified that the site plan identified square footage for one structure, not three separate structures. A member of the City Council also testified that when she looks at a development before the Council for approval, separate buildings are separated by a good deal of space.

The West Wing is attached to the North and the South Wings by an expansion joint. The West Wing shares a fire exit stairwell with the North and the South Wings. The parking garage built with the West Wing also services the North and the South Wings. A trustee of a neighboring residential subdivision testified that she entered the main entrance to the North and the South Wings and noticed that directories for all three wings, including the West Wing, are posted on a single placard at the entrance. All the tenants of Medical Plaza share the same address of 450 North New Ballas Road.

We also note that the name "West Wing" implies a part of one building. "Wing" is defined as:

A part of a building projecting on one side of, or subordinate to, a central or main part.

Random House Webster's College Dictionary 1495 (2nd ed.1999).

In its brief, HHC states that "despite outward appearances," the West Wing is a separate, freestanding building, connected to the North and South Wings by an expansion joint that "only integrates the buildings from an aesthetic, not structural, standpoint." Aesthetically, the West Wing has the same bricks, windows, and landscaping as the North and the South Wings. A concern for aesthetic appearance is a purpose of the sign regulations, as evidenced by Section 26–100 of the City's Zoning Ordinance. If Medical Plaza outwardly appears to be one building, as the photographs admitted into evidence illustrate, it is reasonable for the Board to regulate the building's signage accordingly. We will not hold the Board to a technical meaning of "freestanding." *See Fisher,* 58 S.W.3d at 526.

Accordingly, the Board's decision is supported by competent and substantial evidence upon the whole record and is not arbitrary, capricious, unreasonable, unlawful or in excess of the Board's jurisdiction. HHC's point on appeal is denied.

## II. Cross–Appeal

■ In its point on cross-appeal, the Board argues that the trial court erred in denying the Board's Second Motion to Dismiss because HHC failed to give timely notice of the trial court proceeding to those parties who participated in the Board hearing, and therefore the trial court lacked jurisdiction to enter its judgment.

We directed the Board to show cause why its cross-appeal should not be dismissed for lack of jurisdiction because the Board does not appear to have standing to appeal the trial court judgment as an aggrieved party. The Board addressed the issue in the Jurisdictional Statement of its brief.

■ The right of appeal exists solely by statute. *Lett v. City of St. Louis,* 24 S.W.3d 157, 160 (Mo.App. E.D.2000). Section 512.020 provides in relevant part:

Any party to a suit aggrieved by any judgment of any trial court in any civil cause ... may take his appeal to a court having appellate jurisdiction.

■ A party is aggrieved when the judgment operates prejudicially and directly on the party's personal or property rights or interest and such is an immediate and not merely a possible, remote consequence. *Lett*, 24 S.W.3d at 160. Standing requires a party seeking relief to have a legally cognizable interest in the subject matter and to have suffered a threatened or actual injury. *Id.* To have standing, the party seeking relief must show two things: (1) the party is sufficiently affected by the action being challenged to justify consideration by the court of the validity of the action; and (2) the action violates the rights of the particular party who is attacking it and not some third party. *Id.*

The Board states that it filed its cross-appeal to preserve its challenge to the trial court's jurisdiction to hear HHC's Petition and that had HHC not appealed, the Board would not be aggrieved by the trial court judgment. The Board suggests that if we were to reverse the trial court judgment, then it would be an aggrieved party. In light of our conclusion regarding HHC's point on appeal, we determine that the Board is not an aggrieved party with standing to appeal the trial court judgment. Therefore, we dismiss the Board's cross-appeal.

### Conclusion

The judgment of the trial court is affirmed. The Board's cross-appeal is dismissed.

WILLIAM H. CRANDALL, JR., P.J., and GLENN E. NORTON, J., concur.