

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FIVE

| | | |
|---|---|---|
| CITY OF COLUMBIA, et al., | ) | No. ED109769 |
| | ) | |
| Respondents, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | |
| | ) | Cause No. 14SL-CC04026 |
| SPECTRA COMMUNICATIONS | ) | |
| GROUP, LLC, et al., | ) | Honorable Ellen H. Ribaudo |
| | ) | |
| Appellants. | ) | Filed: July 19, 2022 |

## Introduction

Respondents City of Columbia and City of Joplin ("Cities") sued Appellants Spectra Communications Group, LLC, Embarq Missouri, Inc., CenturyLink Communications, LLC, and CenturyLink, Inc. (collectively, "CenturyLink") in the Circuit Court of St. Louis County for alleged violations of the Cities' license tax ordinances. The circuit court granted partial summary judgment to the Cities on liability on all counts, ordered CenturyLink to provide a full accounting of its revenues and tax liability in each city, and assessed attorneys' fees and expenses. After lengthy discovery disputes, the circuit court struck CenturyLink's pleadings related to damages as a sanction for CenturyLink's failure to comply with the court's orders. The circuit court's judgment awarded damages, interest, penalties, attorneys' fees, and expenses of $53,802,060.70 to Columbia, and $1,153,678.23 to Joplin.

CenturyLink raises nine points on appeal. In Points I and II, CenturyLink argues the circuit court erred in granting partial summary judgment to the Cities because (1) the plain language of the license tax ordinances imposes a tax on revenue from only "local exchange service" from "telephones located within the city limits" of Columbia, and on receipts from only "exchange telephone service" sold to "consumers" within Joplin, rather than all revenue and receipts received by CenturyLink in each city; and (2) the Cities, by failing to show that all disputed revenues were taxable under the ordinances, did not demonstrate the absence of a genuine issue of material fact.

CenturyLink argues in Points III, IV, and V that the circuit court erred in awarding damages to the Cities because (1) the judgment erroneously declared that all revenue and receipts were taxable; (2) substantial evidence did not support the award because the Cities did not present evidence that their damages calculations complied with the terms of the ordinances; and (3) damages for unpaid taxes incurred before November 20, 2009 fell outside the applicable five-year statute of limitations and the statute was not tolled.

In Point VI, CenturyLink argues the circuit court abused its discretion in sanctioning CenturyLink because it engaged in good-faith attempts to comply with overbroad discovery requests, its actions did not prejudice the Cities, and the sanctions were extreme.

Finally, CenturyLink argues in Points VII, VIII, and IX that the circuit court abused its discretion in awarding the Cities attorneys' fees and expenses because (1) the circuit court erroneously determined that CenturyLink's interpretation of the ordinances was unjustifiable; (2) the Cities lacked standing under Section 392.350;[1] and (3) the award was unnecessary for purposes of discovery.

---

[1] All Section references are to the Revised Statutes of Missouri (2000), as supplemented, unless otherwise indicated.

We affirm the judgment of the circuit court in part, reverse in part, and remand the case for further proceedings consistent with this opinion.

**Facts and Procedural Background**

<u>License Tax Ordinances</u>

The Cities' license tax ordinances impose a tax on certain telephone services provided in the Cities. CenturyLink is a telephone company operating in the Cities and subject to the license taxes.

Columbia Code § 26-121(a) states:

Every person engaged in the business of supplying telephone service in the city for compensation for any purpose shall pay to the city a license tax in an amount equal to seven (7) per cent of the annual gross revenue received by such person for local exchange service from telephones located within the city limits.

Joplin City Code § 30-143 states:

In addition to any other taxes, payments or requirements required by law, a quarter-annual license fee of six percent of the gross receipts of each public utility from the sale of its services to consumers within the present or future boundaries of the city shall be paid.

Joplin's ordinance defines a "public utility" as "any person furnishing exchange telephone service." *Id.* at § 30-141.

<u>*O'Fallon* Class Action Lawsuit and *Aurora* Decision</u>

Two years before the Cities filed their petition, a separate class action lawsuit against CenturyLink was filed on May 10, 2012. *See City of O'Fallon v. CenturyLink, Inc.*, 491 S.W.3d 276, 278 (Mo. App. E.D. 2016). The lawsuit was brought on behalf of Missouri municipalities whose license taxes allegedly were not fully paid by CenturyLink. *Id.* Columbia and Joplin were putative class members until they requested exclusion from the lawsuit.

3

A similar lawsuit, *City of Aurora v. Spectra Comms. Grp., LLC*, also was brought in 2012 and culminated in a published opinion of the Supreme Court of Missouri. 592 S.W.3d 764 (Mo. banc 2019). The *Aurora* decision was published after the circuit court in the present case granted partial summary judgment to the Cities. In light of *Aurora*, CenturyLink moved to set aside the partial summary judgment and for reconsideration of discovery sanctions. The circuit court denied the motions.

## Petition and Counterclaims

The Cities filed their eight-count petition on November 20, 2014. Counts I and II sought a declaratory judgment that CenturyLink failed to report and pay license taxes due under the ordinances and to enjoin CenturyLink from violating the ordinances. Counts III and IV sought an accounting to determine the nature and extent of gross revenue and receipts CenturyLink excluded from the license taxes. Counts V and VI sought damages in the amount of CenturyLink's underpayment of the license taxes. Counts VII and VIII sought damages and attorneys' fees under Section 392.350 for CenturyLink's willful dereliction to pay license taxes.

CenturyLink filed an answer, affirmative defenses, and two counterclaims, one seeking a declaratory judgment that the Cities could not adopt an interpretation of their ordinances to tax CenturyLink's non-taxable revenue streams, and the other seeking attorneys' fees.

## Partial Summary Judgment

On June 30, 2016, the Cities moved for partial summary judgment on liability as to all counts. The Cities argued there was no genuine issue of material fact and it was well settled Missouri law that, in the context of a license tax, gross receipts mean all receipts, without exception. The Cities also argued that CenturyLink's violation of the ordinances was willful, warranting attorneys' fees under Section 392.350. They noted that the *Aurora* circuit court

previously had found that CenturyLink willfully excluded revenue from its calculations of other municipal license taxes.

CenturyLink filed a cross-motion for partial summary judgment. It argued the Cities' claims were barred by the statute of limitations, which was not tolled by the Cities' status as putative class members in *O'Fallon*. CenturyLink also argued the Cities were not entitled to attorneys' fees because they could not establish willfulness as a matter of law, and the Cities lacked standing because they are not "persons" or "corporations" under Section 392.350.

The motions were extensively briefed, including CenturyLink's notice of supplemental authority of the *Aurora* circuit court's entry of judgment. CenturyLink argued the *Aurora* judgment rejected the Cities' theory of liability.

In an order of June 8, 2017, the circuit court granted partial summary judgment on liability to the Cities on Counts I, II, III, IV, V, and VI. In its order, the circuit court held that the Cities' ordinances required CenturyLink to pay license taxes on all gross revenue and receipts attributable to its business in the Cities. The court rejected CenturyLink's position that the license taxes and the gross revenue and receipts taxed were limited to "local exchange service" and "exchange telephone service." The court held that the Cities' ordinances "tax, without exception, all of the gross receipts Defendants receive from providing telephone service in each city." The court further concluded that the applicable statute of limitations is five years, and that the Cities were entitled to sue despite that they were not "persons" or "corporations." The circuit court held that CenturyLink's withholding certain revenue and receipts when computing the license taxes was willful and the Cities were entitled to partial summary judgment on Counts VII and VIII.

For the same reasons, the court denied CenturyLink's motion for partial summary judgment. The court ordered CenturyLink to provide the Cities a full accounting of revenue

received in each city, and of the license taxes paid, and ordered CenturyLink to pay the Cities their costs, including attorneys' fees, pursuant to Sections 392.350, 488.472, and 527.100.

Discovery Disputes

The Cities filed a motion to enforce accounting shortly after the circuit court granted them partial summary judgment. CenturyLink opposed the Cities' motion, arguing it already produced all relevant data and the pendency of *Aurora* required a stay of all proceedings.

On October 10, 2017, the circuit court granted the Cities' motion. The court ordered CenturyLink to disclose the amount and source of all revenue attributable to its business in each of the Cities in a usable form that enabled the court and the parties to understand the data. The court also ordered CenturyLink to disclose all revenue that it had excluded from reporting and payment of taxes. The court enumerated revenue categories for which CenturyLink must provide data. The court also ordered CenturyLink to disclose revenue received from each of its customers, a list of customers, and the amount of tax it paid and did not pay on attributable revenue in each city.

One month after the October 10, 2017 order, CenturyLink moved for an extension of time. The Cities opposed the motion, arguing CenturyLink continuously delayed and refused to provide data. The court granted CenturyLink until January 17, 2018 to comply with the order. On April 13, 2018, the Cities filed a motion for contempt for CenturyLink's failure to comply with the court's orders. On May 22, 2018, the circuit court named a special master pursuant to Rule 68.01 to resolve the Cities' motion for contempt.[2]

After extensive briefing of the contempt motion, the special master entered a preliminary report on August 20, 2018, finding that CenturyLink did not comply with the circuit court's order

---

[2] The Honorable Stephen N. Limbaugh, Sr. served as the special master. All Rule references are to the Missouri Supreme Court Rules (2014), as supplemented, unless otherwise indicated.

requiring CenturyLink to disclose attributable revenue in a usable and understandable form. The special master noted that CenturyLink consistently referred to the manner in which revenue data was parsed in *Aurora*, and found that the data in *Aurora* did not meet the requirements of the court's order. The special master concluded that CenturyLink must produce a "roadmap" of the data to comply with the order.

CenturyLink objected to the special master's preliminary report, arguing that the Cities had all the information needed to compute damages, and that the Cities should have asked CenturyLink to create a roadmap instead of filing a contempt motion. After receiving briefs, the court adopted the special master's preliminary report in its entirety. The court agreed that CenturyLink's failure to comply with the court's order could not be cured by reference to the data produced in *Aurora*.

On May 20, 2019, the special master ordered CenturyLink to comply with the court's October 10, 2017 order. The circuit court adopted the order on June 18. On July 3, CenturyLink filed a memorandum purporting to outline its compliance with the special master's order and continuing to cite the procedures followed in *Aurora*.

The Cities filed a motion for sanctions pursuant to Rule 61 on September 4, 2019. The Cities argued that CenturyLink repeated already-rejected arguments, did not comply with the court's orders, and consistently violated the orders for years. CenturyLink opposed the motion, and the matter was argued to the circuit court. On December 27, the court entered an order finding that the only sanction warranted under this "extreme set of circumstances" was to strike CenturyLink's pleadings and affirmative defenses as related to damages, and thus to prohibit CenturyLink from offering evidence at the damages hearing on October 6, 2020.

On March 4, 2020, the Cities filed another motion pursuant to Rule 61 for attorneys' fees and costs they incurred in the lengthy discovery disputes. CenturyLink opposed the motion,

arguing that deposition testimony established that the data disclosed by CenturyLink was used by the Cities' accounting expert to calculate damages. CenturyLink again invoked *Aurora* as a basis to deny the Cities' motion. On June 23, 2020, the court denied the motion on the basis that the previously imposed sanctions were sufficient.

Judgment

The circuit court entered its final order and judgment on June 3, 2021. The court took judicial notice of its file, including all of the court's previous orders, the special master's orders, and the numerous discovery motions. The court repeated that the license tax ordinances tax, without exception, all of the gross receipts CenturyLink receives from providing telephone service in each city and held, "Defendants must pay a license tax on all of their gross receipts attributable to Defendants' business in the Cities." The court found that CenturyLink unjustifiably excluded certain revenue categories when calculating and paying license taxes. The Cities' license taxes were self-reporting, meaning the information necessary to calculate them was solely in CenturyLink's control. The court concluded that CenturyLink failed to satisfactorily comply with any of the court's orders to disclose data related to its gross revenue and receipts.

The court also observed that the ability of the Cities' accounting expert to calculate damages with data provided by CenturyLink did not excuse CenturyLink's non-compliance and did not mean the Cities were not prejudiced. The court determined that the damages period began in 2007 and that the Cities' status as putative class members in *O'Fallon* tolled the statute of limitations for their claims against CenturyLink. The court imposed a penalty on CenturyLink under Section 144.250 for its willful refusal to pay the taxes owed under the ordinances.

The court awarded damages to Columbia and Joplin in unpaid license taxes; pre-judgment interest; post-judgment interest pursuant to Section 408.040; a five percent penalty under Sections

8

71.625 and 144.250; and a total of $813,085.92 in attorneys' fees, costs, and expenses to the Cities pursuant to Sections 392.350 and 527.100, and Rule 61. Judgment was entered for Columbia in the amount of $53,802,060.70, and for Joplin in the amount of $1,153,678.23, for unpaid license taxes, interest, penalties, attorneys' fees, and expenses. The court incorporated all of its previous rulings and dispositive orders into the judgment. This appeal follows.

**Discussion**

CenturyLink raises nine points on appeal, many of which we consider in combination.

Points I-V: Summary Judgment and Damages

In Points I and II, CenturyLink argues the circuit court erred in granting partial summary judgment to the Cities because (1) the plain language of the license tax ordinances imposes a tax on gross revenue for "local exchange service" from "telephones located within the city limits" of Columbia, and on gross receipts for "exchange telephone service" sold to "consumers within the present or future boundaries" of Joplin, as opposed to all revenue and receipts received by CenturyLink in each city; and (2) the Cities, by failing to show that all disputed revenues were taxable under the ordinances, did not demonstrate the absence of a genuine issue of material fact.

CenturyLink argues in Points III, IV, and V that the circuit court erred in awarding damages to the Cities. Points III and IV repeat substantially the same arguments raised in Points I and II. Point V avers that damages for unpaid taxes incurred before November 20, 2009 fell outside the applicable five-year statute of limitations and the statute was not tolled.

**A. Standard of Review**

We review summary judgment *de novo*. *Kroner Invs., LLC v. Dann*, 583 S.W.3d 126, 128 (Mo. App. E.D. 2019). A circuit court's order granting summary judgment will be affirmed on

9

appeal if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* We review the record in the light most favorable to the non-moving party. *Id.*

## B. Discussion

The interpretation of a municipal ordinance is a question of law that is reviewed *de novo*, and questions of law are matters for the independent judgment of the reviewing court. *See Aurora*, 592 S.W.3d at 784; *HHC Med. Grp., P.C. v. City of Creve Coeur Bd. of Adjustment*, 99 S.W.3d 68, 71 (Mo. App. E.D. 2003). We use the same rules governing statutory interpretation to interpret a city ordinance. *City of St. Peters v. Roeder*, 466 S.W.3d 538, 543 (Mo. banc 2015); *New Life Evangelistic Ctr. v. City of St. Louis*, 564 S.W.3d 665, 685 (Mo. App. E.D. 2018). "The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." *Kehlenbrinks v. Dir. of Revenue*, 577 S.W.3d 798, 800 (Mo. banc 2019) (quoting *State ex rel. Young v. Wood*, 254 S.W.3d 871, 872-73 (Mo. banc 2008)). Words contained in an ordinance should be given their plain and ordinary meaning. *HHC*, 99 S.W.3d at 71.

CenturyLink argues that the partial summary judgment on liability ignores the plain language of the license tax ordinances and erroneously expands the Cities' tax bases. CenturyLink further argues that the circuit court's order conflicts with Supreme Court precedent in *Aurora* by disregarding qualifying language in both ordinances that limits taxable revenue and receipts.

In *Aurora*, our Supreme Court analyzed whether CenturyLink's carrier access revenue and revenue derived from interstate telephone calls were taxable under the license tax ordinances of the cities of Aurora, Cameron, Oak Grove, and Wentzville. 592 S.W.3d at 795-96. As in this case, the cities in *Aurora* argued that the phrase "gross receipts" includes all receipts without deduction. *Id.* at 795. The Supreme Court rejected that argument as ignoring the qualifying language of the ordinances. *Id.* Aurora's and Cameron's license tax ordinances included the qualifying phrase

10

"derived from the furnishing of such service within said City." *Id.* at 796. Similarly, the Oak Grove and Wentzville license tax ordinances were qualified by the phrases "in the City" and "from such business." *Id.* The Supreme Court concluded that the *Aurora* circuit court properly accounted for the qualifying language, heard evidence as to where the revenue was derived, and determined certain revenue sources were not taxable. *Id.* at 797. In doing so, the Supreme Court reminded us to give meaning to "all words, clauses, and phrases" of an ordinance. 592 S.W.3d at 796 (citing *Barry Simon Dev., Inc. v. Hale*, 210 S.W.3d 312, 317 (Mo. App. E.D. 2006)).

To the extent the Cities acknowledge the qualifying language, they effectively urge us to ignore it by construing the ordinances to render all revenue, derived from any business not entirely outside the Cities, taxable. But this Court's role is to interpret the law, not to amend it. *See Li Lin v. Ellis*, 594 S.W.3d 238, 244 (Mo. banc 2020) ("[T]his Court, under the guise of discerning legislative intent, cannot rewrite the statute . . .." (internal quotation omitted)); *State ex rel. Vandenboom v. Bd. of Zoning Adjustment of Kansas City*, 633 S.W.3d 446, 458 (Mo. App. W.D. 2021) ("In interpreting laws, we are not authorized to re-write them in contravention of the plain language effected by the legislative body in enacting them."). The Cities, by contrast, generally are free to amend their own ordinances.

Like the ordinances in *Aurora*, the Cities' ordinances contain qualifying language that must be given meaning, and not all gross revenue and receipts in each city are taxable. The plain and ordinary meaning of Columbia's ordinance is that revenue only from "local exchange service from telephones located within the city limits" is taxable. Columbia Code § 26-121(a). In Joplin, receipts only from the sale of "services to consumers within the present or future boundaries of the city"

11

are taxable.[3] Joplin City Code § 30-143. Thus, the Cities are not entitled to judgment as a matter of law.

Given our conclusion that not all of CenturyLink's gross revenue and receipts in each city are taxable pursuant to the ordinances, the Cities bore the burden on summary judgment to show there was no genuine issue of material fact regarding which of CenturyLink's revenue and receipts were taxable. *See Green v. Fotoohighiam*, 606 S.W.3d 113, 116 (Mo. banc 2020) (stating that, under Rule 74.04, the party moving for summary judgment must establish there is no genuine dispute as to those material facts on which it would have the burden of persuasion at trial). Because the Cities' position was that all of CenturyLink's gross revenue and receipts were taxable, they presented no evidence regarding the taxability of any particular category of revenue or receipts.

Therefore, various genuine issues of material fact persist regarding CenturyLink's taxable gross revenue and receipts. Examples include the issues of which of CenturyLink's services were local exchange service and which were not, which services were from telephones located within the Columbia city limits, which services were sold to consumers within the boundaries of Joplin, and ultimately the mixed question of which of CenturyLink's gross revenue and receipts are taxable. These are genuine issues of material fact for determination on remand.

Points I and II are granted. The partial summary judgment in favor of the Cities is reversed. Accordingly, we must also reverse the resulting judgment awarding damages, interest, and penalties in favor of the Cities, rendering CenturyLink's damages arguments in Points III and IV

---

[3] CenturyLink further would have us hold that receipts only from "exchange telephone service" are taxable under Joplin's ordinance. In this respect, CenturyLink is guilty of ignoring the plain language of the ordinance. Joplin City Code § 30-143 refers generally to "services." The phrase "exchange telephone service" does not appear in § 30-143 and therefore does not qualify the receipts taxable under that section. Instead, the phrase appears in § 30-141, which defines a "public utility" as "any person furnishing exchange telephone service." CenturyLink undisputedly furnishes exchange telephone service and is a public utility subject to taxation pursuant to the terms of § 30-143, but that does not limit the taxable "services" under § 30-143 to "exchange telephone service."

moot. *See Morgan v. State Farm Fire and Cas. Co.*, 344 S.W.3d 771, 781 (Mo. App. S.D. 2011). Points III and IV are denied as moot.

In Point V, CenturyLink additionally challenges the judgment awarding damages on the basis that the Cities' putative membership in the *O'Fallon* class action did not toll the statute of limitations. Though this point likewise is moot, we choose to address CenturyLink's argument because it likely will come up again on remand if any damages are to be assessed. *See Morgan*, 344 S.W.3d at 781-82 (stating we address only moot points that present a recurring unsettled legal issue or that are likely to come up again on remand).

CenturyLink's argument is refuted by controlling caselaw. Putative membership in a Missouri class action lawsuit tolls the statute of limitations. *See Rolwing v. Nestle Holdings, Inc.*, 437 S.W.3d 180, 184 (Mo. banc 2014) ("The only recognized equitable tolling principles apply when the plaintiff was prevented from timely filing suit by . . . other pending litigation."); *Hyatt Corp. v. Occidental Fire & Cas. Co. of N.C.*, 801 S.W.2d 382, 389 (Mo. App. W.D. 1990) ("These class action complaints tolled the statute of limitations on behalf of *all* putative [class members], including those who subsequently filed their own actions or settled individual claims during the pendency of the . . . class action." (emphasis in original)). CenturyLink's reliance on *Rolwing* is misplaced, as that case dealt with a pending class action lawsuit in a different jurisdiction, which is not a basis for tolling under Missouri law. 437 S.W.3d at 184. Point V is denied.

We reverse the partial summary judgment and the judgment awarding damages, interest, and penalties. We remand the case to the circuit court for further proceedings consistent with this opinion, so that the parties may fully litigate all genuine issues of material fact, any unpaid license tax, and the remedy therefore.

## Point VI: Sanctions

13

In Point VI, CenturyLink argues the circuit court abused its discretion in striking CenturyLink's pleadings, including affirmative defenses, related to damages and prohibiting CenturyLink from presenting evidence at the damages hearing. CenturyLink maintains that it engaged in good-faith attempts to comply with overbroad discovery orders, the Cities were not prejudiced, and the sanctions were extreme.

### A. Standard of Review

Circuit courts have broad discretion in controlling discovery, including the choice of sanctions for non-disclosure of discovery. *Carmed 45, LLC v. Huff*, 630 S.W.3d 842, 856 (Mo. App. E.D. 2021). A circuit court's imposition of sanctions is reviewed for abuse of discretion. *Id.* We defer to the circuit court's factual findings. *Hoock v. SLB Acquisitions, LLC*, 620 S.W.3d 292, 301 (Mo. App. E.D. 2021).

### B. Discussion

While circuit courts have broad discretion in sanctioning discovery violations, a limiting principle is that sanctions should be constrained to those required to accomplish the purposes of discovery. *Carmed 45*, 630 S.W.3d at 856 (citing *Dorsch v. Family Med., Inc.*, 159 S.W.3d 424, 439 (Mo. App. W.D. 2005)). Rule 61.01(d)(2) provides that a circuit court may strike a non-compliant party's pleadings, though Missouri courts generally consider that a harsh sanction. *Frontenac Bank v. GB Invs., LLC*, 528 S.W.3d 381, 390 (Mo. App. E.D. 2017). Striking a party's pleadings is not an abuse of discretion when (1) the party engaged in a pattern of repeated disregard of the obligation to comply with discovery rules, "i.e., the party has demonstrated a contumacious and deliberate disregard for authority of the trial court;" and (2) the other party was prejudiced. *Id.*

In its December 27, 2019, sanctions order, the circuit court found that CenturyLink's failure to provide discovery required by the court and the special master, continuous objections to

14

the court's rulings, and dubious representations that it had complied with the court's orders were "willful and wanton." CenturyLink's conduct delayed the proceedings by necessitating numerous motions to compel, motions for sanctions, and rulings by the circuit court and the special master ordering CenturyLink to comply with discovery orders. The court further found that the Cities were prejudiced by this conduct by CenturyLink. The court sanctioned CenturyLink under this "extreme set of circumstances," pursuant to Rule 61. In its final judgment of June 3, 2021, the circuit court recalled that CenturyLink's "recalcitrance" necessitated the court's appointment of the special master and the Cities' engagement of an expert witness to calculate CenturyLink's tax liability, despite that the court ordered CenturyLink to disclose its revenue and calculate its tax liability in its October 10, 2017 order. The court's factual findings regarding CenturyLink's conduct and the resulting prejudice to the Cities are entitled to our deference. *See Hoock*, 620 S.W.3d at 301.

On a cautionary note, CenturyLink's failures to comply with the circuit court's discovery orders are not excused by our conclusions that the circuit courts' interpretation of the ordinances was overbroad and that, as a consequence, its discovery orders required CenturyLink to disclose revenue and receipts not taxable. It should go without saying that a party may not refuse to comply with a circuit court's discovery order because it is convinced the order is objectionable, even if upon later review the order proves to have been objectionable. *See* Rule 61.01(a) ("Any failure to act described in this Rule 61 may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has served timely objections to the discovery request . . .."); *Carmed 45*, 630 S.W.3d at 857 (observing that, after appellant resisted providing discovery, moved to stay discovery, and argued the requests were overbroad, "Rule 61.01(a) provided that

15

[appellant's] failures to respond may not be excused on the ground that discovery sought was objectionable."). These sanctions, though harsh, were not an abuse of the circuit court's discretion.

Point VI is denied. The circuit court's order imposing sanctions striking CenturyLink's previous pleadings, including affirmative defenses, related to damages and prohibiting CenturyLink from offering evidence at the damages hearing is affirmed. Those sanctions were constrained to past pleadings and the damages hearing of October 6, 2020, and will not inhibit future pleadings or proceedings on remand. Our sense is that no further sanction for CenturyLink's previous non-compliance with the circuit court's discovery orders is required to accomplish the purposes of discovery. Whether some other sanction becomes necessary to redress any future non-compliance by CenturyLink remains within the broad discretion of the circuit court. *See Carmed 45*, 630 S.W.3d at 856.

<u>Points VII-IX: Attorneys' Fees and Expenses</u>

Finally, CenturyLink argues in Points VII, VIII, and IX that the circuit court abused its discretion in awarding the Cities attorneys' fees and expenses. CenturyLink argues in Point VII that the circuit court erroneously determined that CenturyLink's interpretation of the ordinances was unjustifiable, in Point VIII that the Cities lacked standing in that they are not "persons" or "corporations" under Section 392.350, and in Point IX that the imposition of additional Rule 61 sanctions in the form of attorneys' fees was unnecessary to accomplish the purposes of discovery.

**A.  Standard of Review**

We review the circuit court's award of attorneys' fees and expenses for abuse of discretion. *Selleck v. Keith M. Evans Ins., Inc.*, 535 S.W.3d 799, 783 (Mo. App. E.D. 2017).

**B.  Discussion**

16

In its order granting partial summary judgment, the circuit court found that CenturyLink's underreporting and underpaying of license taxes was willful in violation of Section 392.350. The court ordered CenturyLink to pay attorneys' fees and expenses to the Cities pursuant to Sections 392.350, 488.472, and 527.100. Thereafter, the Cities moved pursuant to Rule 61 for an award of attorneys' fees as an additional sanction for CenturyLink's discovery intransigence. The court denied the Rule 61 motion because the previously imposed sanctions of striking CenturyLink's pleadings and prohibiting it from presenting evidence at the damages hearing were sufficient. In its final judgment, the court nonetheless awarded attorneys' fees, costs, and expenses under Sections 392.350 and 527.100, and as a further sanction under Rule 61.

CenturyLink argues in Point VII that the circuit court incorrectly determined that CenturyLink's interpretation of the ordinances was unjustifiable because the court wrongly interpreted the ordinances to tax all gross revenue and receipts. Section 392.350 provides that a circuit court may impose attorneys' fees on a telecommunications company that commits any unlawful act or omits to do any act required by Chapter 392 if such an act or omission was "willful." Section 488.472 contains substantially the same "willful" standard, and Section 527.100 permits a circuit court to award costs "as may seem equitable and just."

Missouri courts follow the American rule that each party generally bears the costs of its own attorneys' fees. *Aurora*, 592 S.W.3d at 790 (citing *Tupper v. City of St. Louis*, 468 S.W.3d 360, 374 (Mo. banc 2015)). The term "willful" is not defined in either Section 392.350 or 488.472, but Missouri courts have interpreted the term for purposes of Section 392.350 as "intentionally acting, knowing it was incorrect, or acting without any reasonable basis." *Aurora*, 592 S.W.3d at 790; *see Overman v. Sw. Bell Tel. Co.*, 706 S.W.2d 244, 257 (Mo. App. 1986).

In *Aurora*, as here, the cities asserted that attorneys' fees awarded pursuant to Sections 392.350, 488.472, and 527.100 were necessary because CenturyLink intentionally underpaid and underreported license taxes knowing that doing so was unlawful. 592 S.W.3d at 790. There, and here, that assertion was based on the mistaken premise that no category of revenue was excludable from the gross revenue and receipts used to calculate license taxes. *Id.* at 790-91. Because that premise was incorrect, the *Aurora* court reversed the award of attorneys' fees. *Id.* at 791-92. We likewise are compelled to reverse the award of attorneys' fees and expenses pursuant to Sections 392.350, 488.472, and 527.100. Point VII is granted.[4]

Finally, in Point IX, CenturyLink argues the circuit court abused its discretion in awarding attorneys' fees, costs, and expenses as a sanction pursuant to Rule 61 in its final judgment. We already have held that the sanctions of striking CenturyLink's damages pleadings, including its affirmative defenses, and prohibiting it from presenting evidence at the October 6, 2020 damages hearing, though harsh, were not an abuse of discretion. Regarding the increased sanctions of attorneys' fees, costs, and expenses pursuant to Rule 61, the circuit court was right the first time in denying the Cities' motion. In its June 23, 2020 order, the court explained that it previously awarded sanctions for the same issues raised in the Cities' motion and found those sanctions sufficient. The later award of attorneys' fees, costs, and expenses in the circuit court's final judgment was not directed at any additional, distinct discovery violation and, at that late stage, was not required to accomplish the purposes of discovery. *See Carmed 45*, 630 S.W.3d at 856; Rule 61.01(d)(4). Point IX is granted.

---

[4] CenturyLink raises an alternative standing theory in Point VIII for reversing the circuit court's award of attorneys' fees in the partial summary judgment order. Because we reverse the award of attorneys' fees on the grounds raised in Point VII, we need not address CenturyLink's alternative theory in Point VIII. *See generally Clippard v. Clippard*, 642 S.W.3d 761, 765-66 (Mo. App. S.D. 2022) (citing *O'Hare v. Permenter*, 113 S.W.3d 287, 289 n.2 (Mo. App. E.D. 2003)).

The judgment of the circuit court awarding attorneys' fees, costs, and expenses to the Cities is reversed.[5]

## Conclusion

The partial summary judgment on liability in favor of the Cities and the resulting judgment awarding damages, interest, and penalties in favor of the Cities are reversed. In addition, the orders awarding attorneys' fees, costs, and expenses are reversed. The case is remanded to the circuit court so that the parties may fully litigate all genuine issues of material fact, any unpaid license tax, and the remedy therefore.

The circuit court's discrete order sanctioning CenturyLink by striking solely its past pleadings, including affirmative defenses, related to damages and prohibiting CenturyLink from offering evidence at only the October 6, 2020 damages hearing is affirmed. Those sanctions were constrained to past pleadings and the damages hearing of October 6, 2020, and will not inhibit future pleadings or proceedings on remand.

We affirm the judgment of the circuit court in part, reverse in part, and remand the case for further proceedings consistent with this opinion.

_____
Cristian M. Stevens, J.

Sherri B. Sullivan, P.J., and
Kurt S. Odenwald,J.,concur.

---

[5] The Cities filed a motion for attorneys' fees on appeal for the same reasons the circuit court awarded attorneys' fees. We took the motion with the case. Because we reverse the circuit court's award of attorneys' fees, we also deny the Cities' motion for attorneys' fees on appeal. *See Aurora*, 592 S.W.3d at 801 (quoting *Vogt v. Emmons*, 181 S.W.3d 87, 97 (Mo. App. E.D. 2005), for proposition that "the entitlement to attorneys' fees on appeal stands upon the same ground as that at the trial court level").